## STATE v. GILLETTE'S ESTATE et al.
(No. 1073–4707; Motion No. 8065.)

Commission of Appeals of Texas, Section A. Nov. 28, 1928.

M. S. Long, Dist. Atty., and Kirby, King & Overshiner, all of Abilene, for the State.

Milton E. Lawrence and J. M. Ferrell, both of Eastland, for defendants in error.

## On Motion for Rehearing.

CRITZ, J. This case involves the constitutionality of chapter 16, Senate Bill No. 165, Second Called Session of the 36th Legislature, entitled "An act creating a county court at law for Eastland county." The act is also found in Vernon's Revised Civil Statutes 1925, articles 1970—142 to 1970—152, inclusive. In our original opinion, adopted by the Supreme Court on the 28th day of March, 1928, and found in 5 S.W.(2d) 131, we held that the act was void, but, since the record showed that the county judge of Eastland county had entered all the orders and decrees, and the other proper officers of said county had also acted in all probate matters involved in this suit in their proper official capacities, that the mere fact that they used the superfluous words "at law" in so acting did not invalidate such probate proceedings. On motion for rehearing it is pointed out to us that we were in error in the above holding; and we now find that the record conclusively shows, and it is admitted by all parties to the suit, that, since the above act is purported to have gone into effect, Eastland county has had a county judge who has presided over the "County Court" and a purported judge of said purported "County Court at Law," who has presided over said "County Court at Law," and said two judges are not the same person. Furthermore, it is conclusively shown and admitted by all parties to the suit that none of the judgments, orders and decrees involved in the purported probate proceedings under consideration in this case were made or rendered by the county judge of Eastland county, or any one in possession of the office of county judge, or claiming to act as such, but that all of said purported orders, judgments, and decrees were made and entered by the purported judge of said "County Court at Law," acting in such purported official capacity. Our confusion in

this matter was caused by that portion of section 2 of the act which reads as follows:

"The County Judge of Eastland County shall be the judge of the County Court at Law for Eastland County, Texas."

We presumed, from the above part of the act, that its provision had at least been attempted to be carried out. In view of the above mistaken conclusion in our original opinion, we now withdraw the same, and here and now substitute the following opinion in lieu of, and to take the place of, said original opinion:

## Substitute Opinion.

This suit was originally instituted in the district court of Taylor county, Texas, for and on behalf of the state of Texas, by Hon. N. S. Long, district attorney of the district in which Taylor county is located, against Mrs. Ada Lawrence and her husband, H. E. Lawrence, to escheat 60⅔ acres of land situated in Taylor county, Texas, to the state. On trial of the case in the district court of Taylor county, judgment was rendered for the state. The case was appealed by Mrs. Ada Lawrence and husband to the Court of Civil Appeals of Texas for the Eighth District at El Paso, which court reversed the judgment of the district court and remanded the case to the district court of Taylor county for a new trial. 286 S. W. 261. The case is now before this court on writ of error granted on application of the state of Texas.

The petition in this case is in two counts. The first count sets up in substance the following alleged facts:

F. G. Gillette died in November, 1918, seized and possessed of the 60⅔ acres of land in controversy in this suit. On February 20, 1919, temporary letters of administration upon said estate were issued to H. E. Lawrence by the county court of Eastland county. No further proceedings were had in the county court with reference to this estate. In April, 1923, H. E. Lawrence applied to the county court at law of Eastland county for letters of administration, and on May 18, 1923, said county court at law entered an order appointing him administrator, and he attempted to qualify and sell the land to L. Gann in September, 1923, under application made to, and order of sale made by, said county court at law. Gann conveyed the land to Mrs. Ada Lawrence, wife of H. E. Lawrence. It was alleged that the attempted appointment of H. E. Lawrence as administrator of said estate, and all proceedings thereunder, were null and void, because, under the Constitution of this state, the county court at law of Eastland county had no jurisdiction in probate matters, and that the act creating said court was unconstitutional and void, in so far as it attempted to confer probate jurisdiction on said court, and that

therefore no valid administration had been had or was then pending upon the Gillette estate.

The second count in the petition is in the alternative, in that it alleges that, if the administration proceedings of the county court at law were valid, the appointment of Lawrence as administrator, and the sale of the property to Gann, and Gann's conveyance to Mrs. Lawrence were fraudulent, for the reason that the land was sold for a grossly inadequate consideration, and in reality a sale by the administrator to himself, the title being ultimately vested in the wife for his benefit; that in truth Gann paid nothing for the land; that the administrator filed and caused to be approved false and fraudulent claims in his favor against the estate; that he caused the land to be sold at private sale in order to acquire it for himself, and the land would have brought a much higher price if it had been sold at public sale; that Mrs. Lawrence acquired the land with notice and knowledge of the fraud of the administrator, wherefore she held the land under a constructive trust in favor of the state, etc.

The case was tried before the court without a jury, and the court filed its findings of fact and conclusions of law. The court expressly, refused to pass upon the first count in the petition, involving the constitutionality of the act of the Legislature in creating the county court at law for Eastland county, and attempting to confer probate jurisdiction on said court, but entered a judgment for the state on the second count.

The Court of Civil Appeals in effect holds that the act creating said court and conferring probate jurisdiction thereon is constitutional and valid, under section 1 of article 5 of our state Constitution. We cannot agree to this holding. The act attempting to create the county court at law for Eastland county, Texas, is chapter 16, page 46, of the Acts of the Second Called Session of the 36th Legislature. The act is also set out in Vernon's Revised Civil Statutes of Texas, 1925, arts. 1970—142 to 1970—152, inclusive.

An examination of said act will disclose that it attempts to confer on the county court at law of Eastland county the general probate jurisdiction conferred by the Constitution on the county court. Said act attempts to give said county court at law jurisdiction to probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards. It further attempts to give said county court at law jurisdiction to grant letters testamentary and of administration, and, in effect, to do all and every act, and exercise all probate jurisdiction, of the county court. Further, the wording and effect of said act is to attempt to deprive the county court of the probate jurisdiction expressly conferred and vested by the Constitution in the county court.

In construing and interpreting Constitutions, certain well-known rules obtain, as follows:

■ (a) It is the duty of the court, if possible, to give effect to every part and every word of article 5 of our Constitution, and of every section of said article, and, unless there is a clear reason to the contrary, no portion of said article should be treated as superfluous, and, further, it is the duty of the court to avoid a construction of said article 5 which would render any portion or section thereof meaningless or inoperative. Also, in construing the meaning of a particular word, resort may be had to other sections of the same instrument for the sense in which the word is used. 6 R. C. L. p. 48, par. 42.

■ (b) That the well-recognized rule, "expressio unius est exclusio alterius," and the expression of one thing in a Constitution may necessarily involve the exclusion of other things not expressed. Id. p. 49, par. 43.

■ (c) That exception of any particular case presupposes that all those which are not included in such exception are embraced within the terms of a general grant of prohibition. Id.

Our Supreme Court, speaking through Judge Greenwood, in the case of Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799, has clearly announced the rule of law in this state that "the rule of implied exclusion is no more binding in construing statutes than in interpreting Constitutions," and that "it is a rule of construction of constitutions that ordinarily, when the circumstances are specified under which any right is to be acquired, there is an implied prohibition against" the Legislature "to either add to or withdraw from the circumstances specified." Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799, and authorities there cited.

■ Applying the foregoing rules of construction and authorities, let us examine this act in the light of sections 1, 8, 15, 16, 17, and 22 of article 5 of our state Constitution.

An examination of the several sections of article 5 shows that the jurisdiction of the county court is divided and classified under three general heads, viz. criminal, civil, and probate. There is no escape from this conclusion. Section 16 of article 5 first prescribes that the county court shall have certain original jurisdiction in misdemeanor cases. It then prescribes its exclusive and concurrent civil jurisdiction; it then prescribes its appellate jurisdiction, confining it to certain cases civil and criminal; it then provides for appeal from the county court to the Court of Civil Appeals in civil cases, and to the Court of Criminal Appeals in criminal cases. Said section then provides that:

"County courts shall have the general jurisdiction of a probate court; they shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common

drunkards; grant letters testamentary and of administration; settle accounts of executors; transact all business appertaining to deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the settlement, partition and distribution of estates of deceased persons."

The next, section 17 of article 5, provides that:

"The county court shall hold a term for *civil* business at least once in every two months, and shall dispose of *probate* business, either in term time or vacation, as may be provided by law; and said court shall hold a term for criminal business once in every month, as may be provided by law."

Section 8 of article 5, in defining the jurisdiction of the district court, provides, among other things:

"The district court shall have appellate jurisdiction and general control in probate matters over the county court established in each county," etc.

Therefore, under the express provisions of the several sections of article 5 of the Constitution of Texas, there is no escape from the proposition that the Constitution of this state has, by its express terms, defined and divided the jurisdiction of the county court under three well defined and named general classes, viz. civil, criminal, and probate. Timmins v. Bonner, 58 Tex. 554.

"In so far as the Constitution gives to any of the courts an exclusive jurisdiction over any subject-matter, it is not within the power of the Legislature to give that jurisdiction to another tribunal, in the absence of an express grant of such power to the Legislature by the Constitution." Timmins v. Bonner, 58 Tex. 554.

Section 22 of article 5 of our Constitution reads as follows:

"The Legislature shall have power, by local or general law, to increase, diminish or change the civil and criminal jurisdiction of county courts; and, in cases of any such change of jurisdiction, the Legislature shall also conform the jurisdiction of the other courts to such change."

Now, the power is given to the Legislature, under section 1 of article 5, to establish such other courts as the Legislature may deem necessary, etc., and conform the jurisdiction of the district and other inferior courts thereto. This is a general provision of the Constitution, and certainly cannot be held to repeal, alter, or to render meaningless the special provision of section 22, above quoted, which limits the power of the Legislature, in increasing, diminishing, or changing the jurisdiction of the county court, to civil and criminal matters, and limits the power of the Legislature in conforming the jurisdiction of other courts to such changes to civil and criminal matters.

If the act conferring probate jurisdiction on the so-called county court at law of Eastland county can be sustained at all, it must be done under that part of section 1 of article 5 of our state Constitution above referred to, which reads as follows:

"The Legislature may establish such other courts as it may deem necessary, and prescribe the jurisdiction and organization thereof, and may conform tthe jurisdiction of the district and other inferior courts thereto."

However, this provision of article 5 must be read and construed so as to give effect and meaning to section 22 of the same article, as no construction should be indulged in that will render any part of article 5 meaningless. There is no escape from the conclusion that it was the intent and express purpose of section 16 of article 5 of the Constitution to confer exclusive original probate jurisdiction on the county courts. Any other construction of the several provisions of article 5 would render section 22 of said article absolutely meaningless and void. Section 22 of article 5 expressly provides that the Legislature has power to increase, diminish, or change the civil and criminal jurisdiction of county courts and conform the jurisdiction of the district and other inferior courts to such change. If the Legislature has the power or authority under section 1 of article 5, which is a general provision, to increase, diminish, or change the probate jurisdiction of the county court or conform the jurisdiction of the district or other inferior courts to such change, then section 22 would be a meaningless and idle provision.

We therefore conclude that section 22 of article 5 of the Constitution of this state, in so far as the probate jurisdiction of the county court is concerned, speaks exclusively as to the right of the Legislature to increase, change, or diminish the jurisdiction of such courts as prescribed and defined under section 16 of the same article, and that said section 22 speaks exclusively as to the right or power of the Legislature to conform the jurisdiction of the district or other inferior courts to such change. Section 22 limits the power of the Legislature in this respect to the civil and criminal jurisdiction of the county courts. It therefore follows that any effort on the part of the Legislature to increase, diminish, or change the probate jurisdiction of the county court of Eastland county, or to confer such probate jurisdiction on any other court, would be void, as contrary to the fundamental law of the land.

What we have said is in no wise in conflict with the law as announced in Harris County v. Stewart, 91 Tex. 133, 41 S. W. 650, or any of the former decisions of this court bearing on the power of the Legislature under section 1 of article 5 of the Constitution. None of these cases involved the probate jurisdiction of the county court, or the construction of section 22 of said article 5.

Section 15 of article 5 of our state Constitution reads as follows:

"There shall be established in each county in this state a county court, which shall be a court of record; and there shall be elected in each county, by the qualified voters, a county judge, who shall be well informed in the law of the state, shall be a conservator of the peace, and shall hold his office for two years, and until his successor shall be elected and qualified. He shall receive as a compensation for his services such fees and perquisites as may be prescribed by law."

It is plainly evident that section 16 of article 5 of our Constitution which defines the jurisdiction of the county court, and section 22 of the same article prescribing the power of the Legislature to increase, diminish, or change the civil and criminal jurisdiction of the county court and the other article above referred to, have reference alone to the county court established by operation of the Constitution itself, under said section 15 of article 5 above quoted, and not to such judicial tribunals with the civil and criminal jurisdiction of county courts, as might be created by the Legislature by virtue of the authority conferred under section 1 of said article 5, which gives the Legislature authority to establish such other courts as it may deem necessary, etc. Any other construction would also render section 22 meaningless and superfluous.

It follows, therefore, that the part of the act which attempts to create the "County Court at Law for Eastland County, Texas," and give it probate jurisdiction, and also that part of the act which attempts to deprive the constitutional county court of Eastland county of the exclusive probate jurisdiction conferred thereon by the Constitution, is unconstitutional and void, and all pretended probate orders, judgments, and decrees entered by said county court at law with reference to the estate of F. G. Gillette, deceased, were and are utterly without force and void.

It is now urged on motion for rehearing that part of the act is not in violation of the Constitution, and that the part that is constitutional is severable from that part which is unconstitutional. In other words, it is urged that the Legislature did have the power, under the Constitution, to create the county court at law for Eastland county, Texas, and give it civil and criminal jurisdiction, even if it did not have the power to confer probate jurisdiction on such court, and that the unconstitutional portion of this act can be severed from the constitutional portion, and the constitutional portion allowed to stand. We cannot assent to this proposition that any part of the act can stand, for the reason that it is invalid, uncertain, and unconstitutional in so many particulars that we do not believe that any portion thereof can be given effect. In addition to the fact that all of the act which attempts to confer probate jurisdiction on the "County Court at Law for Eastland County, Texas," is unconstitutional and void, and in addition to the fact that all that part of the act which attempts to deprive the constitutional county court of said county of probate jurisdiction is also unconstitutional and void, the part of the act which attempts to provide a judge for said "County Court at Law" is unconstitutional and in hopeless confusion and doubt.

Section 2 of the act provides:

"The county judge of Eastland County shall be the judge of the County Court at Law for Eastland County, Texas."

Section 5 of the act provides:

"There shall be elected in said county by the qualified voters, thereof, at said election, judge of the County Court at Law for Eastland County, Texas," etc.

When we attempt to construe the part of this act which purports to provide a judge of the "County Court at Law," we are left in hopeless confusion. Under section 2 the county judge is made the judge of the county court at law. Under this section, when it is considered alone, the office of county judge is referred to, and the two offices—that is, that of county judge and judge of the county court at law—are lodged in the same person. This would be in violation of section 40 of article 16 of our state Constitution, which prohibits one person from holding more than one civil office of emolument at the same time, with certain exceptions. If section 2 of the act be given the construction that the Legislature intended to create the separate office of judge, to be filled by a different person than the county judge, which would be giving it a meaning foreign to its wording, and by legislative enactment to appoint the person who was then county judge of said county to hold such office, this, in our opinion, would not be a legitimate legislative function, as the right to fill such an office as was here attempted to be created is lodged under the Constitution in the commissioners' court. State ex rel. Peden v. Valentine, 198 S. W. 1006 (Civ. App., writ refused). Under section 5 it is provided that a judge of the "County Court at Law," etc., shall be elected at said election. We know not what election. If we say that the act means that some person other than the county judge shall be elected judge of the county court at law at the next election, still the act leaves the same person to hold two offices until the next election. This would render this part of the act invalid, for the reason that the act is either constitutional or unconstitutional at the time of its passage. It certainly could not be unconstitutional until an election was held, and then become constitutional. We will not dwell on this matter further. The act is unconstitutional and meaningless in all its pro-

visions touching the office of judge of the court attempted to be created.

For all of the reasons above noted, the entire act is unconstitutional and void, and none of it should be allowed to stand. We cannot consistently say, under any rule of constitutional interpretation, that when the unconstitutional part is cut away that the legislative intent can be carried out by allowing any part of the act to stand.

■■ It is also urged that the court in question should be treated as a de facto court, and that, even though the statute creating the "County Court at Law of Eastland County, Texas," be unconstitutional, that the judge thereof, for the sake of public policy, and the protection of private rights, should be recognized as an officer de facto until the unconstitutionality of the act has. been judicially determined. In other words, it is urged that a de facto officer may exist, though there be no de jure office. We cannot uphold this contention. There can be no officer, either de jure or de facto, unless there be an office to fill. If the act in question is unconstitutional, then it never became a law, and all attempts of all persons purporting to act as judge of said "County Court at Law" were without authority of law and utterly void. Norton v. Shelby County, 118 U. S. 454, 6 S. Ct. 1121, 30 L. Ed. 178.

In Norton v. Shelby County, supra, the Supreme Court of the United States, speaking through Mr. Justice Field, says with reference to de facto officers, de facto courts, and the effect of unconstitutional statutes:

"The doctrine which gives validity to acts of officers de facto, whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy and necessity, for the protection of the public and individuals whose interests may be affected thereby. Offices are created for the benefit of the public, and private parties are not permitted to inquire into the title of persons clothed with the evidence of such offices and in apparent possession of their powers and functions. For the good order and peace of society their authority is to be respected and obeyed until in some regular mode prescribed by law their title is investigated and determined. It is manifest that endless confusion would result, if in every proceeding before such officers their title could be called in question. But the idea of an officer implies the existence of an office which he holds. It would be a misapplication of terms to call one an officer who holds no office, and a public office can exist only by force of law. This seems to us so obvious that we should hardly feel called upon to consider any adverse opinion on the subject but for the earnest contention of plaintiff's counsel that such existence is not essential, and that it is' sufficient if the office be provided for by any legislative enactment, however invalid. Their position is, that a legislative Act, though unconstitutional, may in terms create an office, and nothing further than its apparent existence is necessary to give validity to the acts of its assumed incumbent. That position, although not stated in this broad form, amounts to nothing else. It is difficult to meet it by any argument beyond this statement. An unconstitutional Act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.

"In Hildreth v. M'Intire, 1 J. J. Marsh [Ky.] 206 [19 Am. Dec. 61], we have a decision from the Court of Appeals of Kentucky which well illustrates this doctrine. The Legislature of that state attempted to abolish the court of appeals established by her Constitution, and create in its stead a new court. Members of the new court were appointed and undertook to exercise judicial functions. They dismissed an appeal because the record was not filed with the person acting as their clerk. A certificate of the dismissal signed by him was received by the lower court, and entered of record, and execution to carry into effect the original decree was ordered to issue. To reverse this order an appeal was taken to the constitutional court of appeals. The question was whether the court below erred in obeying the mandate of the members of the new court, and its solution depended upon another, whether they were judges of the court of appeals and the person acting as their clerk was its clerk. The court said: 'Although they assumed the functions of judges and clerk, and attempted to act as such, their acts in that character are totally null and void unless they had been regularly appointed under, and according to, the Constitution. A de facto court of appeals cannot exist under a written Constitution which ordains one Supreme Court, and defines the qualifications and duties of its judges, and prescribes the mode of appointing them. There cannot be more than one Court of Appeals in Kentucky as long as the Constitution shall exist; and that must necessarily be a court "de jure." When the government is entirely revolutionized, and all its departments usurped by force, or the voice of a majority, then prudence recommends and necessity enforces obedience to the authority of those who may act as the public functionaries, and in such a case the acts of a de facto executive, a de facto judiciary, and a de facto Legislature must be recognized as valid. But this is required by political necessity. There is no government in action except the government de facto, because all the attributes of sovereignty have, by usurpation, been transferred from those who had been legally invested with them, to others who, sustained by a power above the forms of law, claim to act, and do act, in their stead. But when the Constitution or form of government remains unaltered and supreme, there can be no de facto department, or de facto office. The acts of the incumbents of such departments or office cannot be enforced conformably to the Constitution, and can be regarded as valid only when the government is overturned. When there is a constitutional executive and Legislature, there cannot be any other than a constitutional judiciary. Without a total revolution there can be no such political solecism in Kentucky as a "de facto" court of appeals. There can be no such court whilst the Constitution has life and power. There has been none such. There might be under our Constitution, as there have been, "de facto" officers. But there never was and never can be, under the present Constitution, a "de facto" office.' And the court held that the gentlemen who acted as

judges of the legislative tribunal were not incumbents of de jure or de facto offices, nor were they de facto officers of de jure offices, and the order below was reversed."

We approve the holding as announced by the Supreme Court of the United States above quoted.

█ It is not intended by anything said in this opinion to intimate that causes and other matters filed with the county clerk of Eastland county are not properly filed. On the other hand, we are of the opinion that the mere fact that such clerk might use the superfluous words "at law" in filing papers would not render his acts void. This holding, however, does not affect the result in this case. Gillette died in November, 1918. The application for administration on his estate was filed in April, 1923, and has never been legally presented or acted upon by the county court of said county; therefore no administration is pending on said estate.

We therefore recommend that the motion for rehearing filed herein by plaintiff in error, the state of Texas, be granted, and that the judgment of this court, heretofore rendered, affirming the judgment of the Court of Civil Appeals, be set aside and held for naught, and that judgment be now entered, reversing the judgment of the Court of Civil Appeals and affirming the judgment of the district court.

CURETON, C. J. On rehearing. Judgment previously rendered by this court is set aside, the judgment of the Court of Civil Appeals is reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.