Morgan, Appellant, vs. Potter, Superintendent of Milwaukee Public Schools, Respondent.

*May 22—June 12, 1941.*

*A. W. Richter* and *Paul Gauer*, both of Milwaukee, for the appellant.

For the respondent there was a brief by *Walter J. Mattison*, city attorney, and *Omar T. McMahon* and *John A. Decker*, assistant city attorneys, and oral argument by *Mr. McMahon*.

FOWLER, J. Elizabeth Morgan, who will hereinafter be referred to as the "plaintiff," has been a teacher in the public schools of Milwaukee for over fifty years. During the year 1938 she attained the age of seventy years. At the end of the school year she was retired by the school authorities pursuant to an act of the legislature by its terms providing for a teacher's compulsory retirement at that age. She claims that the city had no right to retire her because, (1) the act referred to does not by its terms apply to her; and (2) because the legislature in 1909 established a permanent-tenure system for teachers applicable to the city of Milwaukee as a city of the first class; that she attained a status of permanent

tenure pursuant to that act; that her permanent-tenure rights were contractual, and that the statute depriving her of that status as applied to her is void under the contract clause of the United States constitution.

The facts are not in dispute. The plaintiff acquired the permanent tenure established by par. 17, sec. 2 of ch. 510, Laws of 1909. The tenure provision of that act (sub. 17 of sec. 925—*xx*, Stats. 1909) is set out in the margin[2] in connection with the discussion of the constitutional point raised. The provision required no act on the part of the plaintiff prerequisite to acquisition of tenure rights as she had taught more than four years when the act went into effect. The plaintiff pursuant to the 1909 act had acquired certain pension rights. These rights are conceded by the defendant to be contractual, and school authorities have proffered to the plaintiff the amount to which they deem her entitled under the pension provisions applicable, which she has so far refused to accept. The amount of her pension is not here in issue as the plaintiff's demand is for reinstatement, and incidentally for the amount of salary as a teacher of which she has been deprived by her compulsory retirement.

(1) The compulsory retirement act, sec. 42.55 (12) (k), Stats., is set out in the margin.[2] Par. (k) was enacted by ch. 160, Laws of 1937. It merely added to sub. (12) of sec. 42.55 as it then stood par. (k). We consider that in its opening phrase, "any teacher coming" under this section (42.55) the word "coming" means "who is," whether the teacher was under sec. 42.55 when ch. 160 was enacted or came under the section thereafter. The word "coming" by implication covers those teachers who had come under sec. 42.55 before par. (k) was enacted, and those who should come under the section thereafter. The natural import of the language of par. (k) is, taking it as a whole, and in connection with sec. 42.55 as a whole, that every teacher in the Milwaukee schools should be retired at the age of seventy,

whether such teacher came under sec. 42.55 after par. (k) was enacted, or had come under it theretofore, and no matter whether the teacher was seventy when the act was passed or thereafter became seventy. The legislature plainly meant by par. (k) that all teachers in the Milwaukee schools should be retired at the age of seventy.

It is suggested that the use of the expression above quoted or similar expression in other parts of sec. 42.55, Stats., negatives this meaning because in every other instance of the use of the same or like phrase the phrase relates to a status to be acquired in the future. Consequently, it is urged, the instant use of the expression should be held to apply only to a permanent-tenure status acquired after par. (k) went into effect.

The conclusion does not follow. In the situations in which the expressions are used in sec. 42.55, Stats., elsewhere than par. (k) the expression could of necessity relate only to a status to be acquired in the future. Something must yet to be done by the teacher as prerequisite to acquiring the status to which the expression relates. The expressions elsewhere in the section could not possibly refer to a status already acquired. The expression in par. (k) applies as aptly to a permanent-tenure status existing at passage of the act as to one subsequently acquired, and par. (k) therefore as reasonably applies to a teacher then having that status as to one who should subsequently acquire it. All expressions in sec. 42.55 in any way like the expression in par. (k) "coming under this section" are contained in the subsections or portions thereof set out in the margin [1] in connection herewith.

It may be noted that the subsections set out in the margin [1] as 1, 2, and 3 obviously refer only to pension payments and

---

[1] 1. Sec. 42.55 *"Teachers' retirement fund in cities of the first class.* (1) . . . Every teacher in the schools of any such city where a pension system has been established . . . who desires to avail

privileges. It is also to be noted that sub. (18) of sec. 42.55, Stats., covers expressly the matter of permanent tenure, and requires nothing to be done by the teacher as prerequisite to acquisition of such tenure and therefore obviates all occasion for filing the notice of acceptance and consent covered by subs. (3) and (4). It seems plain that none of the expressions in sec. 42.55 other than in par. (k) have any bearing whatever on the meaning to be given to the phrase in par. (k) "coming under the act."

(2) The contention of plaintiff that. par. (k) is unconstitutional is ruled by our decision in the recent case of *Morrison v. Board of Education*, 237 Wis. 483, 297 N. W. 383, unless taken out of that rule by the fact that the tenure provision and the pension provision of the general law applicable throughout the state except in cities of the first class

himself of the rights and benefits conferred and to assume the limitations and assessments imposed by this section, shall file a written application therefor and consent thereto, as provided in subsection (3) of this section. . . . Any teacher in the service at the time this subsection takes effect . . . and who elects to come under the provisions of this section . . . [covering pension increases made after the teacher comes under the act] shall pay as arrearages . . . [sum stated]."

2. "(3) *Application, membership.* All teachers employed in the public schools of such cities at the time of the organization of said board desiring to come under the provisions of this section, shall file a written application therefor and consent thereto with the superintendent of schools, or with the clerk or secretary of the managing body of such schools, together with the written authority to the managing body to deduct from each monthly salary due the applicant, the sum or sums hereinafter provided, and to pay the same regularly into the city treasury as part of said annuity and retirement fund as herein provided."

3. "(4) *Implied consent.* Any person accepting an appointment as teacher . . . after this section takes effect, . . . shall, as a part of the consideration for his employment, be conclusively presumed to have consented to the provisions of this section. But any person who shall have attained the age of fifty years before entering the service . . . shall have the option to elect whether such person desires to avail himself of the rights and benefits conferred and to assume the limitations and assessments imposed by this section, and . . . shall file written notice of such election. . . ."

4. "(18) *Probation period.* . . ."

involved in the *Morrison Case, supra,* were adopted at different times by separate statutes entirely independent of each other, while the instant tenure and the pension provisions were enacted by the same statute.

We consider that these two instant provisions are as independent of each other as if they were created by separate statutes at different times. The two provisions were originally enacted by ch. 510, Laws of 1909. That chapter granted two distinct rights. If the provision granting either right possessed the essentials of a contract—if the right was based upon a consideration as distinguished from being a mere gratuity—the right could not be taken away or its obligations impaired, but if either right was a mere gratuity it could be. If a tenure statute grants gratuities, involves no agreement of the parties as to tenure, requires nothing of the teacher as requisite to acquiring the right of tenure, it creates no vested right to tenure and the right can be taken away. *Dodge v. Board of Education,* 302 U. S. 74, 79, 58 Sup. Ct. 98, 82 L. Ed. 57. It is stated in the *Dodge Case* that if the statute required the execution of a written contract, the obligation of the contract so executed could not be impaired. Such was the situation in *Indiana ex rel. Anderson v. Brand,* 303 U. S. 95, 58 Sup. Ct. 443, 82 L. Ed. 685, on which the plaintiff relies as authority. No written contract is here involved. The instant plaintiff was not obligated by contract or by the terms of the original statute to remain in her employment. She might have resigned at any time without subjecting herself to any penalty or damages. The state in granting the tenure privilege required nothing of the teacher. The state's grant was without consideration. What tenure the state gave by the 1909 enactment it could by subsequent enactment take away. The state by enacting the tenure provision did not surrender its right to redetermine, in the future, the qualifications of its teachers, or its public policy in relation to tenure. The constitutional question is so fully

discussed in the *Morrison Case, supra,* that there is no occasion to say anything more here.

We set out in the margin[2] the portions of the statutes involved in the two cases that are material as to their similarity. It is obvious from inspection that the tenure statutes are practically identical in terms, and that the compulsory-retirement statutes are identical in effect, except as to age of retirement.

*By the Court.*—The judgment of the circuit court is affirmed.

---

[2] *Morrison Case.*

Sec. 39.40 (2) "All employment of teachers . . . shall be on probation, and after continuous and successful probation for five years in the same school system or school, either before or after the taking effect of this section, such employment shall be permanent during efficiency and good behavior and until discharge for cause."

Sec. 39.40 (5), Stats. 1939. "After July 1, 1940, the provisions of this section [39.40] shall not apply to a teacher after the close of the school year during which said teacher shall have attained the age of sixty-five years, or to any teacher who shall have attained the age of sixty-five prior to July 1, 1940. . . ."

*Instant Case.*

Sec. 42.55 (18) (Sec. 925—*xx* 17) "All elections or appointments of teachers shall be on probation, and after successful probation for three years, shall be permanent, during efficiency or good behavior, provided that teachers having taught three years or more in cities to which this section applies shall be deemed to have served their term of probation. No teacher who has become permanently employed shall be discharged except for cause upon written charges . . . and notice."

Sec. 42.55 (12) (k), Stats. 1939. "Any teacher coming under the provisions of this section [42.55] who has attained or shall attain the age of seventy years shall be retired by the managing body of the schools at the end of the school year in which the said teacher has reached the age of seventy. . . ."