**JORDAN, County Judge, et al. v. CRUDG-INGTON, County Auditor.**

No. 15091.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 9, 1949.

Rehearing Denied Jan. 13, 1950.

John Peterson and O. M. Calhoun, Amarillo, for appellants.

W. F. Amarillo, for appellee.

HALL, Justice.

The 51st Legislature of the State of Texas enacted into law Vernon's Ann.Civ. St. Article 2338—3, styled Court of Domestic Relations, Potter County, which. is known in the record of this case as House Bill No. 250, and shown at page 792 of the General and Special Laws of the 51st Legislature, Regular Session.

Appellee John Crudgington, County Auditor of Potter County, refused to approve vouchers and county warrants for payment of accounts and costs incident to establishing and maintaining said court, on the ground that the law which attempted to establish said court was unconstitutional.

Appellants E. E. Jordan, County Judge of Potter County, acting in such capacity and in behalf of the Commissioners' Court of said County, filed their petition for writ of mandamus in a district court of said County, praying, among other things, that appellee be ordered to approve said vouchers and accounts presented to him by the bearer thereof.

The parties stipulated that all issues of fact were established by the pleadings, which embraced the refusal of appellee as County Auditor of Potter County to approve the accounts and sign the warrants presented to him to pay the cost of establishing and maintaining said court of domestic relations for Potter County, as set out in House Bill 250.

The case was tried to the court which decreed that said domestic relations court established for Potter County by House Bill 250, 51st Legislature, was for all intents and purposes a district court and

that since it does not conform to the pattern of a constitutional district court, the act attempting to create it is null and void and of no force and effect.

We find the trial court's judgment is correct because by a reading of the act it is easily ascertained the Legislature intended that the jurisdiction of said court would be equal to the jurisdiction of a district court in certain matters, and yet the act provides for the following:

(1) The judge shall be appointed instead of elected.

(2) The act does not require said judge to hold its term of court at the county seat of said county.

(3) The judge is not required to be an attorney or a judge of a court in this state for four years next preceding his election, according to the requirement set out in section 7, Article V of the Constitution, Vernon's Ann.St.

(4) The act does not require the judge to be a resident of Potter County during his term of office.

(5) The act does not require that the judge be a citizen of the United States or of the State of Texas.

(6) Said judge is empowered to impanel grand juries of six members (instead of twelve) and petit juries of six members (instead of twelve).

(7) That said petit juries of six members are authorized to try felony cases which provide for maximum penalty not exceeding two years' confinement in the state penitentiary.

(8) That the judge of said court would have jurisdiction to try divorce and marriage annulment cases, including the adjustment of property rights involved therein, as well as cases of child support, alimony pending final hearing and adjustment of property rights and any other matter incident to divorce or annulment proceedings.

(9) Salary of said judge shall be paid by the county, such salary to be fixed by the Juvenile Board.

(10) Said Juvenile Board is to be composed of the County Judge of Potter County and the two district judges of said County.

(11) Said Juvenile Board shall have the power to appoint said judge for a term of four years and said Board shall have authority to remove said judge from office at will for incompetence, malfeasance and misfeasance in office or for conduct unbecoming a member of the judiciary, upon complaint duly filed with, or instituted by the Juvenile Board, after a fair hearing thereon.

(12) Judge of said court to have authority to appoint juvenile officers and investigators as might be deemed necessary to administer jurisdiction, subject to approval of the Commissioners' Court.

(13) Section 9 provides the judge of said court would have authority to issue injunctions, restraining orders and such other writs as are now or hereafter may be issued under the laws of this state by district courts in matters in which said court has jurisdiction; and also said judge shall have power to punish for contempt.

(14) Said court would have the right to appoint a court reporter and to try the cases in accordance with the practice, procedure and rules of evidence as now governed by the laws and rules pertaining to district and county courts.

(15) The object of the law is readily recognized in the emergency clause, a portion of which is quoted as follows: "The fact that there is a present imperative need for combining all matters affecting domestic relations under the authority of a single Court, and the fact that cases involving marital relationships and domestic relations generally are inextricably interwoven with problems of juvenile delinquency and dependent and neglected children requiring that all such matters be handled by a single Court, * * *."

Appellants rely upon the third paragraph of section 1, Article V of our Constitution, which is as follows: "The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the District and other inferior courts thereto."

Article V, section 1, of our Constitution sets out in detail, in paragraphs one and two, a pattern of courts which will comprise, in the main, the judiciary of this state, and while it is true it has been held by our Supreme Court in the case of Reasonover v. Reasonover, 122 Tex. 512, 58 S.W.2d 817, and in the late case of State ex rel. Rector et al. v. McClelland, Tex. Sup., 224 S.W.2d 706, handed down November 30, 1949, that the Legislature has authority to establish additional courts by reason of the third paragraph above enumerated of section 1, Article V of the Constitution, yet it is also noted that the Supreme Court has held in these cases that the Legislature is without authority to remove from the jurisdiction of a district court any of the powers conferred by the Constitution.

While it is true that in the bill attempting to establish this court for Potter County under the act in question there is no attempt to exclude from the jurisdiction of the district court any jurisdictional matters, it does allow such court to share jurisdictional matters set out in our Constitution to be tried in district courts, such as felony criminal cases, impaneling of grand juries, receiving the return of indictments, trial of divorce cases, etc.

We note in the last stated case wherein the Supreme Court upheld a newly created probate court of Harris County, as provided by House Bill No. 677 of the same Legislature, Vernon's Ann.Civ.St. art. 1970—110a that the provisions pertaining to the selection and qualification of the judge of such probate court are even greater than those of the county court with which said newly created court is sharing the responsibility of certain jurisdictional matters.

Then too, section 22 of Article V of the Constitution authorizes the Legislature to do the following pertaining to county courts: "The Legislature shall have power, by local or general law, to increase, diminish or change the civil and criminal jurisdiction of County Courts; and in cases of any such change of jurisdiction, the Legislature shall also conform the jurisdiction of the other courts to such change."

In the Reasonover case [122 Tex. 512, 58 S.W.2d 819] it is noted that Corpus Juris defines the word "conform" as "to make of the same form or character; make like; adjust"; and the word "conformity" as meaning "agreement, congruity with something else." Then the Supreme Court, following such quotation from Corpus Juris, makes the following statement: "If 'conform' means 'to deprive,' the Legislature is empowered to take away from the regular district court all the jurisdiction given it by the Constitution, and confer it upon the statutory courts. This would not be 'conforming,' but 'destroying,' the jurisdiction of the district court, to the extent the Legislature might elect. It is difficult to believe the people so intended, or that they intended to give to the word 'conform' a meaning other than its ordinary meaning."

While we realize the same question in the Reasonover case is not before this court in the instant case, yet it is distinctly noted that in the Reasonover case the Legislature did not undertake to transfer jurisdictional matters from a district court to an inferior court, or to a court whose judge has less qualifications than is required of a district judge, as was attempted to be done in House Bill 250 before us.

It would be a result of the destruction of the pattern of our courts as laid down by our Constitution in Article V, section 1, for the Legislature to whittle away the jurisdiction of the constitutional courts set out therein by passing laws transferring such jurisdictional matters from such courts to inferior courts and allow such important jurisdictional questions to be decided by laymen.

So in our interpretation of section 1, Article V of the Constitution, by using the Supreme Court cases above and others which we have read as our guide, we find the Legislature was without authority to create an inferior court to try cases involving jurisdictional questions as set out in our Constitution and in our statutes that are to be tried in the district court; yet we readily recognize that the third paragraph of said section 1, Article V of the Constitution authorizes the Legislature to

create courts of limited jurisdiction, as recognized by the Supreme Court in Ex parte Richards et al., 137 Tex. 520, 155 S. W.2d 597, but the qualifications of the judges of said courts, the terms of office and the ways of selecting the judges are all comparable to the courts having jurisdiction of said cases prior to the time of the creation of said additional courts.

At the time House Bill 250 was passed by the Legislature, the qualifications set out in our Constitution in section 7, Article V for a district judge who has authority to try and dispose of certain constitutional jurisdictional cases, as enumerated in House Bill 250, require that said judge shall be a citizen of the United States and of this state, must have been a practicing lawyer of this state "or a judge of a court in this State, for four years next preceding his election," he shall have resided in the district in which he was elected for two years next preceding his election and in his district during his term of office.

Since the passage of House Bill 250, section 7 of Article V of the Constitution has been amended by a vote of the people so that the quoted portion of section 7, supra, of the Constitution is eliminated, and therefore those who have been a judge of a court for four years but who were not attorneys will not hereafter be eligible to become a district judge to try cases involving constitutional jurisdictional questions. We also note in the recent Rector case supra, not reported at time of this writing, wherein the Legislature created a new probate court to assist the County Court of Harris County in probate matters, the Legislature required the judge of that court to have been a practicing attorney for at least five years, while in fact the constitutional requirements for the qualification of a county judge under section 15, Article V are in truth and in fact nil. The reason we make this statement is because even though said section 15 does say "there shall be elected in each county, by the qualified voters, a County Judge, who shall be well informed in the law of the State;" yet it does not legally disqualify any person from being elected to the office, regardless of whether they know any law or not. It therefore seems the trend of the wishes of the people is that those judges who try civil and criminal cases shall be even more learned in the law than they previously were, which is in harmony with the word "conform" as set out in the third paragraph of section 1, Article V of the Constitution, upon which appellant relies, and as interpreted by the Supreme Court in the cases supra.

In analyzing our opinion we find the framers of the Constitution thought that certain types of cases, both civil and criminal, were of sufficient importance to be tried only in the district courts. They further thought that the judges of the district courts should be selected in certain prescribed ways, their terms should be for a definite period, and they should possess certain minimum qualifications. They were careful to provide that a jury should be composed of twelve persons. The act before us, both by its terms and by the language of its emergency clause, discloses an effort on the part of the Legislature to refer the trial of many kinds of cases which under the Constitution should be tried in a district court presided over by a district judge to a tribunal of uncertain character and jurisdiction, whose judge may be any layman selected by a small committee of three persons, who, for all practical purposes, hold the power to discharge him at will. If this effort be valid, then succeeding Legislatures may set up special tribunals of all kinds to try this, that or the other kind of case with the probable result that the erosive process thus begun might eventually destroy the system of courts contemplated by the terms of our Constitution, and create in their place and stead a parallel system of courts whose organization and procedure do not conform to the provisions of said Constitution. We cannot lend our approval to such an undertaking.

For the reasons above stated, we affirm the judgment of the trial court.