# JANUARY, 1924.

IDELL TURNER ET AL. v. JESSIE TUCKER ET AL.

No. 4050.     Decided January 16, 1924.

(258 S. W., 149.)

**1.—Constitution—Courts—County Seat—Texarkana Court at Law.**

The statute creating the Texarkana Court at Law (Act of March, 1923, Laws, 38th Leg., sec. 69, p. 133) is unconstitutional and void. It is in conflict with article 5, sec. 7, of the Constitution, as amended in 1891, the court thereby created having the powers of and being in effect a district court such as by the Constitution was required to be held at the county seat. It is also in conflict with article 9, sec. 3, of the Constitution governing the removal of county seats. (Pp. 438-440.)

**2.—County Seat Defined—Removal.**

The county seat of a county is a part of the political and civil divisions of the State, being the town in the county in which its court house is situated, where the county offices are kept, and where the district and county courts for the county are held. It can be removed only by vote of the county electors (Const., art. 9, sec. 2) and not by local or special law (Const. art. 3, sec. 56.). (P. 440).

**3.—Same—Judicial Notice.**

Courts take judicial notice of the location of a county seat and of the locality in which a large portion of the population and property is situated. (P. 437).

**4.—District Court.**

A tribunal may constitute a district court where authorized to exercise a part of the constitutional jurisdiction of such court, though not all of it. (Pp. 438, 439).

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Bowie County.

Jessie Tucker sued Idell Turner and others and recovered judgment. This was affirmed (25 S. W., 641) on appeal by defendant, who thereupon obtained writ of error.

*Wheeler & Robison*, for plaintiffs in error.

The act of the Legislature creating the Texarkana Court at Law is unconstitutional and void in so far as it attempts to confer jurisdiction on said court given by the Constitution to the District Court; said act provides for the sitting of the said Texarkana Court at Law at Texarkana, a place in Bowie County other than the County seat of Bowie County, and limits its territorial jurisdiction to Commissioner's Precinct No. 1 of Bowie County. Whitener v. Belknap, 89 Texas, 273; Rochelle v. State, 89 Texas Crim., 592.

*Kenney & Dalby*, for defendants in error.

The following cases hold that trial courts may sit at places which are not county seats without destroying the legal integrity of the county seat: Ellis v. State, 92 Tenn., 85, 20 S. W., 500; Johnson v. Fulton (Ky.), 89 S. W., 672; Whallon v. Circuit Judge, 51 Mich., 503, 16 N. W., 876-880; Merchants National Bank v. McNaron (Ala.), 55 So., 242; Bell v. Jarvis, 98 Minn., 109, 8 Amer. & Eng. Ann. cases, 938, and cases there cited from Iowa, Indiana and other states.

"The Legislature may establish such other courts as it may deem necessary, and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto." Const., art. 5, sec. 7, Amendment of 1891.

This amendment to section 1 was adopted to enable the Legislature to establish other courts with jurisdiction concurrent with not only justice courts, but with both district and county courts, and with authority to sit at places other than the county seat. Carter v. M. K. & T., Ry. Co., 106 Texas, 137; Harris County v. Stewart, 91 Texas, 143.

If no court exercising the principal functions of a District Court can hold its terms elsewhere than at the county seat, then will the Court indicate what additional authority to create trial courts the. amendment did confer? This is the second statute enacted since 1891 in an effort to relieve conditions in Bowie County, which are not only annoying and inconvenient to lawyers, litigants, witnesses and jurors, but which often result in delaying trials, and sometimes in defeating the ends of justice.

The county seat is at the territorial center and can be held there by one more than one-third of the voters. The great bulk of the litigation, both civil and criminal, originates in Texarkana, 24 miles away.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

This was a suit in the District Court of the Fifth Judicial District of Texas within and for the county of Bowie to partition lands situated in Commissioners' Precinct No. 1 of said county, brought by defendant in error Jessie Tucker, against plaintiffs in error, who were minors, and others. The District Court entered an order transferring the suit to the "Texarkana Court at Law," more than ninety days after the adjournment of the session of the 38th Legislature at which was passed the Act creating and establishing the "Texarkana Court at Law." Plaintiffs in error, by their guardians ad litem, presented a plea to the jurisdiction of the "Texarkana Court at Law," which was overruled, and thereafter a final judgment was rendered ordering the land be partitioned as prayed for by defendant in error Jessie Tucker, from which judgment an appeal was taken by plaintiffs in error to the Honorable Court of Civil Appeals of the Sixth Supreme Judicial District, resulting in an affirmance of the judgment of the "Texarkana Court at Law." Thereupon plaintiffs in error applied for and were granted a writ of error.

The question for determination is whether the plea to the jurisdiction of plaintiffs in error should have been sustained for the reason that the act of the Legislature creating the "Texarkana Court at Law" was and is unconstitutional and void.

This Act created and established a court of record in Bowie County, called the "Texarkana Court at Law," and granted such court, within the territorial limits of Commissioners' Precinct No. One of Bowie County, including the City of Texarkana all the civil jurisdiction at law and equity theretofore exercised by the District Court of the Fifth Judicial District of Texas within and for the county of Bowie, and by the County Court of Bowie County, and all such jurisdiction as might be thereafter vested in district and county courts of this State, except that the "Texarkana Court at Law" should not have or exercise jurisdiction over: A. Suits by the State to recover escheats and penalties; B. Cases involving official misconduct or removal from office; C. Contested election cases or proceedings; D. Writs of, and proceedings by, quo warranto and prohibition; and E. Probate matters involving the administration of estates of decedents and the guardianship of infants or lunatics, so that the jurisdiction of the county and district courts of Bowie County, as probate courts, should not be in anywise reduced or affected. The Act provided that the "Texarkana Court at Law" should have exclusive original juris-

diction of misdemeanor criminal cases, except those involving official misconduct, where the offenses were committed within the aforesaid territorial limits, of which the justice or other inferior courts did not have original jurisdiction, and that as to misdemeanors arising within the City of Texarkana, the "Texarkana Court at Law" should have concurrent jurisdiction with the city corporation court. The Act gave the Texarkana Court at Law" certain appellate jurisdiction, civil and criminal, such as was theretofore exercised by the County Court of Bowie County in cases appealed from any justice or corporation court within said territorial limits. The Act declared the "Texarkana Court at Law" to be a juvenile court, with full power to try delinquent children and to control and dispose of all neglected or dependent children. The Act required the "Texarkana Court at Law" to hold its session at the City of Texarkana, in a suitable building or place to be furnished by the city, until a permanent court house could be legally constructed and furnished. The Act provided for the appointment of a judge and a clerk of said court, each to reside within Commissioners' Precinct No. One of Bowie County. The clerk was required to keep his office in the building wherein said court may be held. The "Texarkana Court at Law" was declared subject to the rules of practice and procedure in the district and county courts of the State. Finally, the Act undertook to conform the jurisdiction of the district and county courts of Bowie County and of the corporation court of the City of Texarkana to the changes made by the Act. See Acts 38th Legislature, Chapter 69, page 133.

The Act plainly undertakes to establish a court at Texarkana, to exercise, within certain territorial limits embracing that city, most of the jurisdiction in civil cases theretofore exercised by the District Court of the Fifth Judicial District of Texas within and for Bowie County, as well as substantially all jurisdiction, civil and criminal, theretofore exercised by the County Court of Bowie County, except in probate matters. This court takes judicial knowledge that within Texarkana is located a large portion of the population and property of Bowie County, and that the town of Boston—and not the city of Texarkana—is the county seat.

The Act is claimed to be a valid exercise of the power which the Constitution confers on the Legislature in Section 1, of Article V, to "establish such other courts as it may deem necessary, and prescribe the jurisdiction and organization thereof," and to "conform the jurisdiction of the district and other inferior courts thereto." This conclusion is deduced from the propositions that the constitutional provisions are to be liberally construed, and that so construed the Legislature is given absolute authority not only to create new courts and to confide to them any part of the jurisdiction of the district or other inferior courts, but that the Legislature possesses unlimited dis-

cretion with respect to the location of such new courts.  These propo-
sitions are in effect approved in the opinion of the Honorable Court of
Civil Appeals, with citations to the cases of Carter v. Missouri, K. &
T. Ry. Co., 106 Texas, 137, 157 S. W., 1169, and Harris County v.
Stewart, 91 Texas, 143, 41 S. W., 650.

In our opinion, the Act establishing the ''Texarkana Court at Law''
certainly violates two imperative provisions of the Constitution, and
hence its validity cannot be upheld.

The Constitution of the Republic of Texas, adopted in 1836, pro-
vided that the district courts should be held ''at such times and places
as Congress may by law direct.''  The Constitutions of the State of
Texas of 1845, 1861, and 1876 each required the holding of two terms
of the district court at ''one place in each county.''  By the amend-
ment of 1891, it was required in Section 7, of Article V, of the Con-
stitution, that each district judge ''shall hold the regular terms of
his court at the county seat of each county in his district at least
twice in each year, in such manner as may be prescribed by law.''

Subsequent to the adoption in 1891 of the amendment to Sec. 7,
of Article V, of the Constitution, the Legislature passed an Act es-
tablishing at Texarkana a court to be styled ''Texarkana Civil and
Criminal Court,'' and granting to it all jurisdiction conferred by the
Constitution on district and county courts, save and except in probate
matters.  When the validity of the Act was assailed, it was determined
by the Supreme Court that the new court was essentially a district
court, since it possessed such a court's jurisdiction, save in probate
matters, and that the Act was passed in violation of the Constitution.
Whitener v. Belknap & Co., 89 Texas, 273, 24 S. W., 594.  The court
said in the opinion of Associate Justice Brown: ''The section of the
Constitution quoted above specifically requires the judge to hold the
regular terms of his court at the county seat of each county in his
district.  It follows by necessary implication that he cannot hold a
regular term of his court at any other place than the county seat of
the county, and the Legislature had no power to authorize or require
a district judge to do what the Constitution forbade him to do.''

There could have been but one purpose in changing the provision
for district courts to be held at *one place* in each county, as it had
stood for more than forty-five years, to the provision for such courts
to be held at *the county seat* of each county, and that was to make
entirely plain the intent that the business of the district court should
not be disposed of elsewhere than at the county seat.  And, we have
not the least doubt that a court empowered to discharge principal
functions of the district court must be regarded as a district court
in giving effect to the command of the amendment.

The question whether a court exercising only a part of the consti-
tutional jurisdiction of the district court was governed by the pro-
visions of the Constitution applicable to the district court was three

times presented to the Court of Criminal Appeals. It was thrice decided by that court that an act of the Legislature conferring the jurisdiction of both district and county courts over criminal causes on a criminal court had the effect to establish a district court, so as to invalidate a provision of the act fixing six as the number of jurors to try misdemeanor causes in such criminal court, because the provision conflicted with the constitutional requirement that twelve men shall compose grand and petit juries in district courts. Rochelle v. State, 89 Texas Crim., 592, 232 S. W., 838; Shipp v. State, 89 Texas Crim., 584, 232 S. W., 840; Bennett v. State, 89 Texas Crim., 617, 232 S. W., 841.

Careful consideration of other provisions of the Constitution leads irresistibly to the conclusion that such a court as is created by this Act can not be established at a place other than the county seat.

As above recited, the Constitution of the Republic authorized Congress to fix the places at which the district courts should be held. Congress soon passed the Act of May 8, 1838, carried into Hartley's Digest as article 337, entitled "An Act Providing for the Removal of County Seats of Justice," to the effect that a majority of two-thirds of the votes of the qualified voters of a county should be required to remove the "seat of justice," in any of the counties of the Republic; provided, that a majority of the votes should be sufficient for the removal from a point more than five miles from the center of a county to within the limits of five miles from such center. On April 11, 1846, a statute was enacted directing that *until* county seats of new counties were established the courts therein should be held at such places as might be appointed by the county courts. Art. 339 Hartley's Digest. By Act approved March 16, 1848, the sheriffs, district clerks, and county clerks were required to keep their offices at the respective county seats of their counties, on penalty of indictment and removal from office.

By Section 2, of Article X, of the Constitution of 1876, the removal of any county seat was forbidden, if situated within five miles of the geographical center of the county, except by vote of two-thirds of all the electors voting on the subject, provided that a county seat might be removed from a point more than five miles from the geographical center of the county to a point within five miles of such center by vote of a majority of the electors of the county. Section 2, of Article X, is still in force as originally adopted.

By article 704 of the Revised Statutes of 1879, being article 1396 of the Revised Statutes of 1911, all terms of the district, county and commissioners' courts are required to be held at the county seat. Other statutes have required, as they still require, the court house, jail, and all county offices to be provided and maintained at the county seat. Articles 705 and 706, R. S. of 1879, being articles 1397 and 1399. R. S. of 1911.

It thus appears that Section 2, of Article X, of our Constitution is a substantial re-enactment of the Act of Congress of 1838, and that in the Act what is now termed a county seat was originally called the seat of justice in the county. Moreover, it appears that the county seat in the Republic and in the State of Texas has always been the point at which have been held the more important trial courts in the administration of justice. In the light of our constitutions and statutes, it seems to us not to admit of any reasonable doubt that the words "county seat" as used in Section 2, of Article X, of the Constitution mean the place where the court house is situated, where the county offices are kept, and where the district and county courts for the county are held. Ascribing such meaning to the words "county seat," the Legislature has been plainly denied the authority to remove therefrom the courts, district and county, wherein much of the county's civil and criminal court business is to be tried and determined.

Were we to affirm the validity of this Act, we would transfer to the Legislature a power which the Constitution jealously guards in the qualified voters of the county, and which at times the Constitution permits to be exercised only with the concurrence of two-thirds of such voters.

We give to the words "county seat" their ordinary signification. The Century Dictionary defines the "county-seat" to be: "The seat of government of a county, the town in which the county and other courts are held, and where the county officers perform their functions." In Ex Parte Towles, 48 Texas, 429, soon after the adoption of the Constitution, the court by Chief Justice Roberts said: "The county-seat of a county, like the county itself, is a part of the political and civil divisions of the State. It is provided for, and its locality determined, for the public convenience of the citizens in the transaction of their public business, especially for the holding of the courts, and for the location of the public offices in and for the county."

The intent of the makers of the Constitution to withdraw from the Legislature power to change the places where the district and county courts should hold their sessions and where the county offices should be kept is further indicated by the provision of Section 56 of Article III, forbidding the Legislature to pass any local or special law "locating or changing county seats."

Because the Act of the Legislature is repugnant to Section 7, of Article V, of the Constitution, as amended in 1891, and to Section 2, of Article X, it is void.

It is ordered that the judgments of the courts below be both reversed, and that this cause be transferred to the District Court of the Fifth Judicial District of Texas within and for the County of

Bowie, as though no order had been made for its transfer from that court, and as though there had been no subsequent proceedings in the ''Texarkana Court at Law.''

*Reversed and remanded with directions to transfer.*