# E. E. JORDAN, COUNTY JUDGE, ET AL V. JOHN CRUDGINGTON, COUNTY ATTORNEY.

No. A-2557. Decided June 28, 1950.
(231 S. W., 2d Series, 641.)

238

*John Petterson*, County Attorney, and *O. M. Calhoun*, Assistant County Attorney, both of Amarillo, for petitioners.

The Court of Civil Appeals erred in holding that the Court of Domestic Relations, as established by the Fifty-first Legislature, is to all intents and purposes a Constitutional District Court; in holding that said act of the Legislature is unconstitutional and void, because said court does not conform to the

pattern of the constitutional courts; in holding that said court is not authorized by the constitution, and in holding that petitioners were not entitled to the relief and mandamus prayed for by them. Ex parte Abrams, 56 Texas Crim. Rep. 465, 120 S. W. 883; Ex parte Bennett, 85 Texas Crim. Rep. 315, 211 S. W. 934; Reasonover v. Reasonover, 122 Texas 512, 58 S. W. 2d 817.

*W. F. Nix,* of Amarillo, for respondent.

The trial court and the Court of Civil Appeals were correct in their holdings that the act of the Legislature creating the Court of Domestic Relations for Potter County was unconstitutional, being in violation of Article 3, section 25; Article 5, section 7 and 8; Article 9, section 2; Article 4, section 22; Article 2, section 1, and Article 16, section 40, of the Constitution. Rochelle v. State, 89 Texas Crim. Rep. 592, 232 S. W. 2d 838; State ex rel Hale v. O'Meara, County Judge, 74 S. W. 2d 146; Whitner v. Belknap, 89 Texas 273, 34 S. W. 594.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

The Legislature of Texas at its regular session in 1949 enacted House Bill No. 250, establishing a "Court of Domestic Relations in and for Potter County, Texas," Acts, 51st Leg., Ch. 426, p. 792, Vernon's Revised Civil Statutes of Texas, Art. 2338—3. The Commissioners' Court of Potter County in making provision for setting up the new court incurred certain items of indebtedness, for the payment of which it caused warrants to be issued. The County Auditor, John Crudgington, refused to approve the warrants, and this suit was filed by E. E. Jordan, County Judge, and the four County Commissioners of Potter County to compel him by writ of mandamus to approve them. On the ground that the Act establishing the court is unconstitutional, the trial court refused to issue the writ, and its judgment was affirmed by the Court of Civil Appeals. 225 S. W. 2d 917.

The sole question for decision is the constitutionality of the Act establishing the court. The Act thus defines the court's jurisdiction:

"Said Court of Domestic Relations shall have jurisdiction of all cases involving adoptions, removal of disability of minority, change of name of persons, delinquent, neglected or dependent child proceedings, and all jurisdiction, powers and authority now or hereafter placed in the district or county courts under the juvenile and child welfare laws of this State; and of all divorce and marriage annulment cases including the adjustment

of property rights involved therein, as well as cases of child support, alimony pending final hearing and adjustment of property rights as well as any and every other matter incident to divorce or annulment proceedings; and all other cases of Domestic Relations involving justiciable controversies and differences between parents or between them and their minor children which are now, or may hereafter be, within the jurisdiction of the district or county courts in the manner provided by Article 2337, 2338—1, Revised Civil Statutes of Texas, 1925, Acts of the Regular Session of the 48th Legislature, 1943, Chapter 240, page 313, and Acts of the Regular Session of the 49th Legislature, 1945, Chapter 35, page 52, and any other Article of the Civil or Penal Statutes of this State. It shall also have jurisdiction of all criminal cases involving crimes against children the maximum punishment for which does not exceed two (2) years in the penitentiary, or in which a fine or jail sentence may be imposed, including wife and child desertion, contributing to the delinquency of a minor, enticing a minor from legal custody as provided under Articles 602, 534, and 535 of the Penal Code of this State; and provided that all cases above enumerated may be instituted in, or transferred to said Court."

It will be observed that the Act does not undertake to divest any court of its constitutional jurisdiction and vest same exclusively in the court of domestic relations.

The provisions for the organization of the court may be summarized briefly as follows: A Juvenile Board composed of judges of the 47th and 108 judicial districts and the County Judge of Potter County is created, and the members thereof are allowed additional compensation for their services on the Board. The Board, by and with the approval of the Commissioners' Court, is empowered to appoint and to discharge a judge and a clerk of the court. The sessions of the court shall be held in Potter County, beginning on September 1st of each year and continuing to and including the 31st day of August of the following year. Provision is made for appeals of civil cases to the Court of Civil Appeals and of criminal cases to the Court of Criminal Appeals. The rules of practice and procedure for district and county courts are made applicable to this court. The opinion of the Court of Civil Appeals states that the judge of the court created by this Act is empowered to impanel grand juries. The term "grand jury" does not appear in the Act at all. The court's statement was probably based upon this language taken from Section 14: "All cases, indictments, complaints and other matters over which the Court of Domestic Relations is herein given jurisdiction may be transferred to or instituted

in said Court, * *." Language more specific than that would be required to evidence a legislative intent to provide that the court should have authority to impanel a grand jury. The court is given jurisdiction of but a very limited number of cases involving crime. A grand jury investigates all offenses committed in the county in which it sits. Constitution, Art. V, Sec. 17; Code of Criminal Procedure, Art. 381. As we view this Act as a whole it would violate its purpose to hold that the Legislature intended by the language above quoted to provide that this court, whose jurisdiction is limited to cases involving domestic relations, should impanel a grand jury to investigate crime in general, and no provision of the Act indicates a legislative intent that the court impanel a grand jury with authority to investigate only those offenses of which it has jurisdiction. The language quoted above may be given effect by construing it to provide that cases of which the court has jurisdiction and in which indictments are returned by a grand jury, as well as cases pending on the dockets of other courts, may be transferred to this court of domestic relations, and cases in which no indictment is required may be instituted in it. That construction is in keeping with the purpose of the Act.

Although the history of Article V, Section 1, of our State Constitution has been many times recited, it seems appropriate to recite it again here, for its mere recital is a conclusive answer to many of the criticisms levelled by respondent at the Act under review. In the Constitution of 1876 one provision of that section read as follows:

"The judicial power of this State shall be vested in one Supreme Court, in a Court of Appeals, in District Courts, in County Courts, in Commissioners' Courts, in Courts of Justices of the Peace, and in such other courts as may be established by law. * * *."

In construing that provision in connection with other provisions of the Constitution this court held in Ex parte Towles, 48 Texas 413, that the Legislature was not authorized to add to or change the judicial system as defined in Article V. By that decision, which was followed in subsequent cases, the Legislature was virtually denied the authority to establish such other courts as conditions might require in the future. As a reaction to those decisions and in order to circumvent them and remedy the situation created thereby, which made an elastic judicial system impossible, Article V, Section 1, was amended in 1891. By that amendment there was added this provision:

"The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the District and other inferior courts thereto."

■ After the amendment became effective the Court of Criminal Appeals in Leach v. State, 36 Texas Crim. Rep. 248, 36 S. W. 471, still adhered to the rule announced in Ex parte Towels, but when the question came before this court it was held in Harris County v. Stewart, 91 Texas 133, 41 S. W. 650, that a material change was effected by the amendment, and this court refused to follow the Court of Criminal Appeals. Later the Court of Criminal Appeals in Ex parte Wilbarger, 41 Texas Crim. Rep. 514, 55 S. W. 968, approved and followed the decision of this court in Harris County v. Stewart.

In this court's opinion in the Harris County v. Stewart case the purpose of the amendment is stated in this language: "The last clause of the section copied above was introduced, and the people of the State adopted the amendment for the purpose of ridding the State of the incubus which the construction contended for had saddled upon it." That same opinion states the effect of the amendment in this language: "In other words, the effect of the language is to place the subject at the complete disposal of the Legislature so far as inferior courts are concerned. Later, in Carter v. Missouri, K. & T. Ry. Co. of Texas, 106 Texas 137, 157 S. W. 1169, the purpose and effect of the amendment were stated in this language:

"The manifest purpose of the people in adopting that amendment was to enable the Legislature to meet such conditions as are present in this case, and it is the duty of the courts to act in harmony with the spirit of that amendment, and to give to it a liberal construction. It would be difficult to express more definitely the authority conferred in that clause of the Constitution—to 'establish such other courts as it may deem necessary'—which places in the discretion of the Legislature the character and number of courts that may be created as well as the manner in which the officers shall be chosen. The territory over which the jurisdiction of such court may be exercised and the subjects upon which its authority may be exerted are at the discretion of the Legislature."

Those decisions speak for themselves. They have been followed by this court in many cases, the last of which is State ex rel Rector v. McClelland, 148 Texas 372, 224 S. W. 2d 706. There is no ambiguity in the language of the amendment. It

is plain and easily understood. It expressly recognizes in the Legislature two separate and distinct powers which it may exercise in establishing "such other courts as it may deem necessary." In the first place, it is given power to "prescribe the jurisdiction" of such courts, conforming "the jurisdiction of the District and other inferior courts thereto." And, in the second place, it is given power to "prescribe the * * * organization thereof." The Act under review is an attempt in good faith by the Legislature to exercise the powers thus expressly defined in that amendment. The amendment was not written into the Constitution for the purpose of authorizing the Legislature to establish more district courts or county courts. No question had ever arisen as to its authority to do that. But the amendment was adopted for the purpose of making it certain that the Legislature had the authority to establish courts other than constiuttional courts, and that its acts establishing them should not be stricken down on the ground that they were violative of what might be conceived by vague implications to be the general spirit of the Constitution, or that they did not conform to the constitutional pattern for district courts or county courts. To hold that the pattern for all courts established by the Legislature must conform to the pattern of either the district courts or county courts is to ignore the plain language of the amendment. It is argued that "to undertake to institute a different family of courts in Texas must immediately meet with resistance in the Constitution." We are aware of no provision of the Constitution which · offers resistance to "a different family of courts." To the contrary, the 1891 amendment expressly authorized the Legislature to establish not more of the same courts, but "such other courts as it may deem necessary."

4 Many specific objections are made to the various provisions of the Act. Some of them, as will be set out below, are well taken, but most of them are without merit, for the reason that they proceed from the premise that the court created by this Act is a district court merely because it exercises some of the jurisdiction of district courts. This is not a district court. Neither is it a county court. It is a court established by the Legislature under its constitutional authority to "establish such other courts as it may deem necessary." Decisions which strike down Acts creating what in fact, though not in name, are district courts, but do not conform to the constitutional pattern for district courts, have no application here.

In order to strike down any provision of this Act the court must be able to point to some specific section of the Constitution which condemns it. The principle is so well established as to call

for the citation of no authority that any bill not clearly inhibited by the State Constitution or the higher law of the Federal Constitution may be enacted into valid law by the Legislature.

■ Let us notice some of the principal attacks made upon particular provisions of the Act. It is pointed out that the Act does not require the judge to be a resident of Potter County during the term of his office. That is an immaterial omission, for the matter is regulated both by our Constitution and our statutes. The judge of the court created by this Act is a county officer. Article XVI, Section 14, of the Constitution makes it mandatory that all county officers reside within their counties, and Article 2927 R. S. provides that a county officer must be an actual bona fide citizen of the county for more than six months prior to his election. Those provisions will be read into the law.

■ It is contended that the Act created an additional office of emolument for constitutional judges composing the Juvenile Board and is therefore violative of Article XVI, Section 40, of the Constitution. That question was settled contrary to that contention in Jones v. Alexander, 122 Texas 328, 59 S. W. 2d 1080. Another contention is that the provision for the appointment rather than the election of the judge contravenes Article V, Sections 7, 15, and 18. The authority given by the amendment under review to the Legislature to prescribe the organization of courts created by its certainly is authority to provide it with a judge. Carter v. Missouri, K. & T. Ry. Co. of Texas, supra. As pointed out in an article by Mr. M. L. Cook in 9 Texas Law Review, 388, covering the entire question under review, there is an express provision for the mode of selecting judges of every other court mentioned in the Constitution except "such other courts as it may deem necessary." There is no provision as to the mode of selecting judges for courts of that nature. The absence of any such provision evidences an intent to leave the power of appointment within the discretion of the Legislature. Those specific objections and others of a similar nature would be valid if the court created by the Act were a district court, but since it is not a district court, the objections are without merit. No provision of the Constitution may be pointed to in support of them.

■ There are three provisions of the Act which must be stricken. One is that the term of office of the judge and clerk of the court of domestic relations shall be four years. Article XVI, Section 30, of the Constitution provides that "The duration of all offices not fixed by this Constitution shall never exceed two years."

The provision for a four-year term is violative of this section of the Constitution. Another provision is for the removal of the judge and clerk of this court by the Juvenile Board. That provision is violative of Article V, Section 24, of the Constitution, which provides that county officers may be removed by district judges upon findings by juries. The judge and clerk of the court created by this Act are county officers, and, therefore, can be removed only in the manner prescribed by this section of the Constitution. The Act provides for a jury of six men. Our Constitution provides in Article I, Section 15, that "The right of trial by jury shall remain inviolate." The authorities are in a general agreement that the meaning of the term "jury" is a body of twelve members unless an express provision for a smaller number is contained in the Constitution. 31 Am. Jur. Jury. Sec. 95; 35 C. J. Juries Sec. 10; 50 C. J. S. Juries Sec. 7. Article V, Section 13, of the Constitution provides for juries of twelve men in the district court, and Section 17 of the same Article provides for a jury of six men in the county court. There is no provision in the Constitution expressly prescribing the number of jurors in a court established by the Legislature under the authority of the amendment of 1891. In the absence of such a provision the conclusion is inescapable that the constitutional provision preserving the right of trial by jury requires that juries in courts of record, such as the court created by this Act, be composed of twelve men. 31 Am. Jur. Jury. Sec. 95. This ruling does not apply to justice and police courts. 31 Am. Jur. Jury. Sec. 28; 50 C. J. S. Juries, Sec. 77. Since the provision for a jury of six violates Article I, Section 15, of the Constitution, that provision is invalid.

■ As a result of striking from the Act the three provisions above discussed, must the Act as a whole be condemned? We have concluded that that result does not follow. The Act provides that "If any Section, clause, or part of this Act shall be held invalid, it is hereby declared to be the intention of the Legislature that the remainder thereof not held invalid shall remain in effect, and the validity of the remainder of this Act shall not be affected thereby." Since the above provisions of the Act violate mandatory and exclusive provisions of the Constitution, it is our duty to carry out the express intent of the Legislature by substituting the constitutional provisions for the provisions of the Act which they condemn, with the result that jury trials in the court in question shall be had before juries of twelve men. Norman v. Giles, 148 Texas 21, 219 S. W. 2d 678; Greene v. Robison, 117 Texas 516, 8 S. W. 2d 655. With those constitutional provisions read into the Act it is our con-

clusion that it is a valid exercise of the legislative power; that is to say that none of the objections urged by respondent is valid.

It is accordingly ordered that the judgments of the courts below be reversed and the cause remanded to the trial court with instructions to issue the writ of mandamus as prayed for.

Opinion delivered June 28, 1950.

MR. JUSTICE GRIFFIN, dissenting.

I agree with the majority opinion in so far as it holds that the Legislature, under the provisions of Art. V, Sec. 1, has authority to establish the Court of Domestic Relations for Potter County and to define its jurisdiction. As said by this Court in Whitener v. Belknap, 89 Texas 273, 34 S. W. 594, "In order to determine whether the passing of such law is prohibited by the Constitution, we must first ascertain what has in fact been done by the Legislature by the enactment thereof", and again, "The Legislature could not change the effect of this law by calling it the 'Texarkana Civil and Criminal Court.' The substance and not the name must govern in the construction of that law."

This Court speaking through Judge Greenwood in the case of Turner v. Tucker, (1924) 113 Texas 434, 258 S. W. 149, in determining the kind and nature of "Texarkana Court of Law", said:

"* * * And we have not the least doubt that a court empowered to discharge principal functions of the district court must be regarded as a district court in giving effect to the command of the amendment." (of Sec. 1 of Art. 5 in 1891.)

Rochelle v. State, 89 Texas Cr. Ref. (1921) 592, 232 S. W. 838, referred to by this Court in the case above, uses language particularly applicable to the case at hand when Morrow, P. J., said:

"Manifestly, under the power given the Legislature by article 5, sec. 1, as amended in 1891, it would have the power to create a criminal district court, the language used being 'the Legislature may establish such other courts as it may deem necessary.' It must be observed that, from its inception, the criminal district court, as defined in the statute and as recognized in the Constitution, has exercised jurisdiction which is vested by the Constitution in the district courts: that is, the jurisdiction of

felony cases and all misdemeanors, when by law the jurisdiction of them is transferred from the county court. The criminal district court has, in all cases, contained elements essential to the district court created by the Constitution, and had officers in common with the district court created by the Constitution. Recalling that by express provisions of the Constitution, the jurisdiction in felony cases is conferred upon the district court, and having in mind the legislative acts and constitutional provisions to which we have adverted, we are unable to classify the court in question as other than a district court, with jurisdiction limited to the trial of criminal cases."

How much more evident is it that the Court of Domestic Relations of Potter County which has the Civil and Criminal Jurisdiction of a District Court as set out in the Act creating it, is unable to be classified as other than a district court with jurisdiction limited to the trial of certain civil and criminal matters.

Let us examine the present Act.

Sec. 1 merely names the Court.

Sec. 2 in first paragraph provides qualifications and compensation of the Judge of said Court.

The second paragraph sets out the jurisdiction of said Court as follows:

"Said Court of Domestic Relations shall have jurisdiction of all cases involving adoptions, removal of disability of minority, change of name of persons, delinquent, neglected or dependent child proceedings, and all jurisdiction, powers and authority now or hereafter placed in the district or county courts under the juvenile and child welfare laws of this State; and of all divorce and marriage annulment cases including the adjustment of property rights involved therein, as well as cases of child support, alimony pending final hearing and adjustment of property rights as well as any and every other matter incident to divorce or annulment proceedings; and all other cases of Domestic Relations involving justiciable controversies and differences between parents or between them and their minor children which are now, or may hereafter be, within the jurisdiction of the district or county courts in the manner provided by Articles 2337, 2338-1, Revised Civil Statutes of Texas, 1925, Acts of the Regular Session of the 48th Legislature, 1943, Chapter 240, page 313, and Acts of the Regular Session of the

49th Legislature, 1945, Chapter 35, page 52, and any other Article of the Civil or Penal Statutes of this State. It shall also have jurisdiction of all criminal cases involving crimes against children the maximum punishment for which does not exceed two (2) years in the penitentiary, or in which a fine or jail sentence may be imposed including wife and child desertion, contributing to the delinquency of a minor, enticing a minor from legal custody as provided under Articles 602, 534 and 535 of the Penal Code of this State; and provided that all cases above enumerated may be instituted in, or transferred to said Court."

We notice that all of these matters of jurisdiction are matters over which the Constitution specifically gives a District Court jurisdiction except (a) jurisdiction under the juvenile or welfare laws of this State now or hereafter placed in the County Courts; (b) "all other cases of Domestic Relations involving justiciable controversies and differences between parents or between them and their minor children which are now, or may hereafter be, within the jurisdiction of * * county courts in the manner provided by" certain statutes, naming them; "all criminal cases involving crimes against children * * * in which a fine or jail sentence may be imposed," (c) "contributing to the delinquency of a minor, enticing a minor from legal custody as provided under" certain articles named; and providing "that all cases above enumerated (in the paragraph as a whole) may be instituted in, or transferred to said Court." All these are matters over which the County Court is given jurisdiction by Art. 5, Sec. 16, but which Art. 5, Sec. 22 permits the Legislature to change and to add to the jurisdiction of a district court.

Sec. 3 provides that when the court is organized and the judge shall qualify, the County Judge and the two District Judges of Potter County may transfer to said Court all cases of which the Court "is hereby given jurisdiction", including all papers and orders, etc.

Sec. 4 provides that the Court "shall sit and hold court in Potter County" and provides for dockets and minutes; the appointment of a Clerk of the Court by the Juvenile Board under same terms and conditions as the appointment of the Judge, and makes the Clerk removable on same terms as the Judge; and that the Clerk shall hold office until his successor has qualified.

Sec. 5 creates a Juvenile Board composed of the Judge of two district courts now sitting in Potter County and the County

Judge of Potter County, Texas, and for the compensation of the Juvenile Board.

Sec. 6 provides for the appointment of a Judge of said Court by a majority of the Juvenile Board, by and with the approval of the Commissioners Court, and for a term of 4 years and until his successor is appointed and qualified for each term, the Judge to be removed by the Juvenile Board "for incompetence, malfeasance, and misfeasance in office, or for conduct unbecoming a member of the Judiciary" upon complaint before the Board and after a fair and open trial by the Board. Provides that the Board and its members shall give counsel and advice to the Judge of the Court of Domestic Relations when deemed necessary and when sought by him, and to cooperate with the Judge in administering the Court.

Sec. 7 makes it the duty of all officers, agents and employees of the child welfare board, county welfare office, county health officer, sheriff and constables within Potter County to furnish such services to the Court as shall be required.

Sec. 8 gives the Judge authority to appoint, with the approval of the Commissioners Court, such officers and investigators as may be necessary, and appoint a court reporter if needed, but must utilize services of the regular district court reporter and his assistants when possible and providing that the Commissioners Court shall pay salaries of all such officers, assistants and reporter.

Sec. 9 gives the Judge of the Court power "to issue injunctions, temporary injunctions and restraining orders and such other writs as are now or hereafter may be issued under the laws of this State by district courts, when necessary in cases or matters in which said Court has jurisdiction, and also power to punish for contempt."

Sec. 10 fixes the term of said Court.

Sec. 11 provides appeals from all civil cases to Court of Civil Appeals at Amarillo "as now or hereafter provided for appeals from district and county courts and in all criminal cases appeals shall be to the Court of Criminal Appeals."

Sec. 12 provides: "The practice and procedure, rules of evidence, selection of juries, issuance of process and all other matters pertaining to the conduct of trials and hearings in said Court shall be governed by the laws and rules pertaining to

district and county courts; provided that juries shall be composed of six (6) members."

Sec. 13 makes the District Attorney of the 47th Judicial District and the County Attorney of Potter County responsible "for the prosecution of all cases of a criminal nature in said Court of Domestic Relations."

Sec. 14 provides: "All cases, indictments, complaints and other matters over which the Court of Domestic Relations is herein given jurisdiction may be transferred to *or instituted in* said Court, but the Judge of said Court may transfer any such cases or matters to the county or district court having jurisdiction thereof under the laws of the State, to be tried in such court to which such transfer is made, with the permission and consent of the Judge thereof.

Sec. 15 provides that if any clause or part of the Act shall be held invalid, it is declared to be the intention of the Legislature that the remainder of the Act shall remain in effect and not be affected thereby.

Sec. 16 is the emergency clause.

It is the duty of this Court to uphold the Act of the Legislature in creating the Court of Domestic Relations unless some provision of the Constitution can be cited which clearly shows that the Act or parts thereof are invalid. State ex rel Rector v. McClelland, 148 Texas 372, 224 S. W. 2d 706(2), and authorities cited on p. 710 thereof.

I believe the Court as created is a district court with jurisdiction limited to Domestic Relations and within the power of the Legislature to create. The mere naming of it as a Domestic Relations Court does not change the fact that it has all of the powers of a district court as its jurisdiction is set out, with certain matters of a civil and criminal nature over which a county court has jurisdiction added to the Domestic Relations Court as is permitted by Sec. 22 of Art. 5. "A rose by any other name would smell as sweet."

The Court must be a district court or it would be a void court. It has jurisdiction of felony matters. Our Constitution gives original jurisdiction in felony matters to the District Courts, and this has been the rule since the very beginning of our jurisprudence in Texas.

The language of Dendy v. Wilson, 142 Texas 460, 179 S. W. 2d 269, 151 A. L. R. 1217, by this Court, is particularly applicable to our construction of this Act regarding the jurisdiction of the Court of Domestic Relations in criminal matters:

"The Constitution of Texas gives the Court of Criminal Appeals appellate jurisdiction of all criminal cases. Section 5 of Article V of the Constitution. That court has not construed this Act, and this court is compelled to construe same in the light of the opinions of the Court of Criminal Appeals." l.c.275 1st. col.

I do believe there are certain provisions of the Act which are specifically prohibited by the Constitution and will proceed to point out such provisions.

This being a district court the Judge thereof must have the qualifications set out in the Constitution, Art. 5, Sec. 7, as amended in 1949. That the Judge is a District Judge is further borne out by the provisions of Sec. 6 of this Act providing that his term of office shall be for four years. District Judges are the only Judges holding a 4-year term under the Constitution. That he is considered a Judge there can be no doubt, for the duties devolved upon him are wholly judicial, except as to his juvenile duties and they constitute only a small part of the total duties; he may be removed for "conduct unbecoming a member of the judiciary"; he presides over criminal trials, divorce actions and adjustment of property rights, annulments of marriages, etc., etc.,—all matters for a district court's jurisdiction under our Constitution. By Sec. 9 of the Act he is given the power to issue certain named writs "and such other writs as are now or may hereafter be issued under the laws of this State *by district courts,*" etc. By Sec. 12 of the Act his court is governed by "The practice and procedure, rules of evidence, selection of juries, issuance of process and all other matters pertaining to the conduct of trials and hearings * * * pertaining to district and county courts." Being a District Judge he must initially be appointed by the Governor and must stand for election at the first general election after his appointment (Art. 4, Sec. 12, State Constitution) and can be removed from office only as a District Judge is removed. (Art. 15, Sec. 6.) The Legislature is given the power and authority to determine his compensation by Art. 5, Sec. 7, as amended in 1949, and has done so in this Act. By the last sentence in Section 2 of the Act and by the first sentence in Section 14 of the Act it is provided that indictments may be returned into this Court. That could only be by a grand jury of this Court, Art. 1, Sec. 10, State

Constitution, when a felony has been committed. Jurisdiction for indictments is given to the District Court by Art. 5, Sec. 8, State Constitution.

The Grand Jury and the Petit Jury in this Domestic Relations Court must contain twelve men each as required by our Constitution, statutes, and the adjudicated cases.

In order to meet the requirements of Art. V, Sec. 7, of our State Constitution, the provisions of the Act, Sec. 4, providing that the Court "shall sit and hold court in Potter County" must be construed as requiring the sessions to be held at the County Seat only, Turner v. Tucker (1924), 113 Texas 434, 258 S. W. 149, and not elsewhere. That part of the Act which attempts to create the office of Clerk of this Court must fall as in violation of Art. V, Sec. 9. The Clerk of the Court must be governed by the provisions of our Constitution as to his qualifications, appointment and removal.

I believe that the case of State ex rel Peden v. Valentine (1917), Tex. Civ. App., 198 S. W. 1006, writ refused, announces principles of law consistent with my opinion herein. In that case the Legislature had created the County Court of Tarrant County for civil cases, and attempted to provide for appointment by the Governor of the Judge thereof. Effort was made to sustain this appointment under Sec. 1 of Art. V of the Constitution. In disposing of this contention, Chief Justice Conner of the Ft. Worth Court of Civil Appeals said:

"Section 1, art. 5, of our Constitution as amended, authorizes the Legislature to provide courts other than those named in the Constitution, evidently to the end that the judicial power of the state, except as otherwise restricted, might be from time to time adjusted to exigencies that might arise in the course of the state's expanding development. Hence we find that the Legislature has provided for special 'district courts' (see Acts 1913, pp. 53, 83, 439, and 441) ; criminal district courts (see V. S. Tex. Civ. Stat. arts. 2201c, 2229, 2235a) ; county courts 'at law,' as for Dallas and Harris counties (V. S. Tex. Civ. Stat. arts. 1786 and 1811) ; and county courts for 'civil cases,' as for Tarrant and Bexar counties (V. S. Civ. Stat. arts. 1799 and 1811-6). An examination of these several acts will show that the several courts so provided for are not courts 'other' than those named in the Constitution, in the sense that they are of wholly differing functions, but rather courts of the same kind, but with divided powers. To illustrate: These special district courts and county courts are given jurisdiction over parts of a

whole originally committed to courts of the same class by the Constitution. No special district court is given power not originally committed to district courts, and no special county court is given powers other than were committed to county courts. The names and territorial limits given these special courts rather than the qualifying affixes and suffixes indicate the character of the courts. The affix 'criminal' or the suffixes 'at law' or 'for civil cases' have reference to the character of the divided jurisdiction given rather than to the character of the court. As named they are essentially district and county courts within the meaning of the Constitution. Of course, in a general sense, and perhaps for special purposes, all the courts named are state courts, and their presiding judges state officers. But we cannot for this reason disregard the district classification of our courts by the Constitution and laws where the classification is the point at issue. Numerous references might be made to constitutional and legislative acts that tend to show the sense in which the terms, 'county court' and 'county judge' are used. For instance, section 24, art. 5, of the Constitution provides as follows:

" 'County judges, county attorneys, clerks of the district and county courts, justices of the peace, constables and other county officers, may be removed by the judges of the district courts for incompetency,' etc.

"Here is a plain declaration that county judges are among those who are designated as county officers. The words, 'and other county officers,' after naming certain ones, is a plain declaration that a county judge is a county officer. The act itself which creates the court seems to compel this conclusion. In section 12, c. 17, of the act of 1909 creating the court (1 V. S. Tex. Civ. Stat. art. 1810) it is provided that the judge may be removed from office for the same causes as 'any other county judge,' etc.

"If we are correct, as we think we are, in the foregoing conclusion, it would seem to follow without dispute that the judge of the county court of Tarrant county for civil cases is a county judge, a county officer as contradistinguished from a district judge or a state officer, and hence that appointment to that office needs no confirmation by the senate."

By the same reasoning this Court of Domestic Relations for Potter County is essentially a District Court.

That part of the Act which I hold valid is sufficient to provide the relief for a court to handle domestic relations in Pot-

ter County as set out in the emergency clause, and as saved by Sec. 15 of the Act.

I would, therefore, reverse the judgments of the Court of Civil Appeals and of the trial court, and remand this cause to the district court of Potter County, Texas, for further proceeding in accordance with this opinion.

Opinion delivered June 28, 1950.

MR. JUSTICE SMEDLEY, joined by JUSTICE HARVEY, dissenting.

I agree with the conclusion expressed in Justice Griffin's dissenting opinion and in the opinion of the Court of Civil Appeals herein that the court attempted to be created by the Act of the Legislature under consideration is essentially and in substance a district court, and that the Act, as pointed out in those opinions, violates a number of the important mandatory provisions of the Constitution. The Act in substance differs little from that considered by this Court in Turner v. Tucker, 113 Texas 434, 258 S. W. 149, which attempted to create a court named "Texarkana Court at Law", and which Act was held to be repugnant to the Constitution and void because the court attempted to be created was a district court and according to the terms of the Act was to be held at a place other than the county seat. Both Acts undertake to empower the proposed court to discharge and exercise part of the constitutional juris- of the district court, and because they do that they must be regarded as district courts. See also Rochelle v. State, 89 Texas Crim. 592, 232 S. W. 838; Whitener v. Belknap & Co., 89 Texas 273, 34 S. W. 594.

But even if the "Court of Domestic Relations for Potter County" is not to be regarded as a district court, but rather as some "other court" than those set up by the Constitution, the Act is in my opinion unconstitutional and void,—because it undertakes to give to the court attempted to be created jurisdiction over certain cases, both civil and criminal, the jurisdiction of which is by the Constitution placed in the district courts, and at the same time in violation of the Constitution it undertakes to provide that those district court cases may be tried in the "Court of Domestic Relations for Potter County", the judge of which is not to be elected by the people as the Constitution provides the judges of district courts must be elected (Art. V, Sec. 7), but is appointed by a Juvenile Board created by the Act; and because, according to the express terms of the Act, the judge of said court "shall have such qualifications as are fixed by the Juvenile Board", when the Constitution pro-

vides that a district judge must be a citizen of the United States and of this State, must have resided in the district for two years preceding his election, and must have been a practicing lawyer of this State or a judge of a court of this State for four years next preceding his election (Art. V, Sec. 7) ; and because the Act provides that juries "shall be composed of *six members*", whereas the Constitution provides that grand juries and petit juries in the district court "shall be composed of *twelve men*" (Art. V, Sec. 13) ; and because the Act provides merely that the "Court of Domestic Relations for Potter County" "shall sit and hold court in Potter County", evidently intending that the court may sit anywhere in the county, whereas the Constitution requires that district court be held at the county seat (Art. V, Sec. 7). In other particulars, as pointed out in Justice Griffin's opinion and in the opinion of the Court of Civil Appeals, the Act under consideration contradicts constitutional limitations set up in the Constitution for the organization of courts that try district court cases and for the trial of those cases, but whose mention are enough and of sufficient importance to show what fundamental changes would be wrought in the trial of those cases when tried by such a court as that attempted to be created by the Act before us.

It is true, as emphasized by the opinion of the majority, that there is no express prohibition in the Constitution of the creation by the Legislature of a court like the "Court of Domestic Relations for Potter County". Nor does the Constitution in express terms forbid legislation which creates another court and gives it jurisdiction over certain civil and criminal cases, the jurisdiction over which is placed by the Constitution in the district courts, and which permits in that other court thus created the bringing of indictments for felonies by grand juries of "six members" and permits the trial of civil and criminal district court cases in that court before a judge whose qualifications are prescribed by a board and who is appointed by a board and not elected by the people, and by a jury composed of "six members". But legislation may be forbidden by necessary implication from what is written in the Constitution as well as by express language. Lytle v. Halff & Bro., 75 Texas 128, 12 S. W. 610; Rochelle v. State, 89 Texas Crim. 592, 232 S. W. 838; Reasonover v. Reasonover, 122 Texas 512, 58 S. W. 817; Turner v. Tucker, 113 Texas 434, 438, 258 S. W. 149; State v. Gillette's Estate (Com. App.) 10 S. W. 2d 984; State ex rel Peden v. Valentine, 198 S. W. 1006, 1009, application for writ of error refused; Arnold v. Leonard, 114 Texas 535, 540, 273 S. W. 799; Cooley's Constitutional Limitations (8th Ed.) Vol. 1, pp. 351-359. Chief Justice Stayton's opinion in Lytle v. Halff

& Bro., 75 Texas 128, 132, 12 S. W. 610, contains this statement as to prohibition by necessary implication:

"A prohibition of the exercise of a power can not be said to be necessarily implied, unless looking to the language and purpose of the Constitution it is evident that without such implication the will of the people, as illustrated by a careful consideration of all its provisions, can not be given effect."

When the rule as expressed by Chief Justice Stayton is followed, the answer to the question as to the validity of the Act attempting to create the "Court of Domestic Relations for Potter County" is as simple as this: The Constitution gives to the district court jurisdiction of "all criminal cases of the grade of felony" and of "all cases of divorce", including the determination of property rights, and of other named cases. (Article 5, Sec. 8.) The same Constitution carefully prescribes the qualifications of the district judges who try those cases and requires that they be elected by the voters. The same Constitution provides that grand juries bringing indictments for felonies must be composed of "twelve men" and that juries that try district court cases must be composed of "twelve men" and that the court that tries those cases shall sit at the county seat. It seems too clear for argument that careful consideration of the foregoing provisions of the Constitution must necessarily lead to the conclusion that the will of the people as expressed in its provisions with respect to the court that tries the important civil and criminal cases committed to its jurisdiction cannot be given effect but will be defeated if legislation is upheld which permits the trial of such cases in a court constituted and conducted without regard to those constitutional provisions, but in direct contradiction of them. The words of Presiding Judge Morrow, who wrote the opinion in Rochelle v. State, 89 Texas Crim. Pep. 592, 232 S. W. 838, 839, are most apt here. He said:

"It is true that by its terms, Article 5, Section 1, of the present Constitution does not limit the power of the Legislature to the creation of any particular court, *but it is conceived that if, in the creation of a court, it confers jurisdiction which, under the constitution, belongs to the district courts, it would not be privileged to depart from the provisions named in the Constitution with reference to the jury.*" (Emphasis added.)

Section 1 of Article V of the Constitution as amended in 1891, which in general terms authorizes the Legislature to establish other courts, was not intended to override or to nullify the explicit provisions of the Constitution as to district courts

and district court cases which have been discussed. State v. Gillette's Estate (Com. App.) 10 S. W. 2d 984, 987; Rochelle v. State, 89 Texas Crim. Rep. 592, 232 S. W. 838; Turner v. Tucker, 113 Texas 434, 258 S. W. 149. If the Act under consideration is held valid, then there may and doubtless will be, much other legislation setting up courts with authority to try even more district court cases, both criminal and civil, than those given to the "Domestic Relations Court for Potter County", and to try them in courts where there is a judge appointed by a board and with qualifications prescribed by the board, and a grand jury or petit jury composed of "six members" (or there could be juries of two, three, four or twenty-seven members), and with the trial of cases held *somewhere* in the county. What then would become of the carefully drawn and long tested method set up in the Constitution for constituting the courts and the grand juries and petit juries for the trial of the most important cases, that is, those the jurisdiction of which is given to the district courts?

Litigants having cases within the constitutional jurisdiction of the district court and persons indicted for felonies are entitled, as of right, by reason of the provisions of the Constitution, to have their cases tried in a court presided over by a judge having the qualifications and elected in the manner prescribed by the Constitution, and tried by juries "composed of twelve men" and at the county seat. They cannot be deprived of these constitutional rights by an act of the legislature setting up another kind of court for the trial of their cases.

The legislature cannot take away from the existing district court of Potter County all jurisdiction to try cases of which it has been given jurisdiction by the Constitution. It cannot take away from the district court of Potter County all divorce cases or all felonies which are crimes against children. Reasonover v. Reasonover, 122 Texas 512, 58 S. W. 2d 817. It would follow, therefore, if the Act attempting to create the "Court of Domestic Relations for Potter County" were sustained, that some district court cases, both civil and criminal, would be tried in the district court of Potter County before a judge having the qualifications of a district judge and duly elected, and before a jury of twelve men and at the county seat and that other district court cases, both civil and criminal, would be tried in the newly created court before a judge appointed by the Juvenile Board and having only such qualifications as the Board might prescribe, and before a jury of "six members" and at some place in the county. And the same is true of divorce cases, including the adjustment of property rights, and of felonies which are

crimes against children. Some of these cases would be tried in the district court and some would be tried in the "Court of Domestic Relations for Potter County", which would not be subject to the fundamental constitutional limitations which have been discussed. Section 1 of Article V as amended in 1891 was not intended to authorize such a condition of confusion and inequality in the administration of justice in important cases.

The opinion of the majority deals but casually with the implications that necessarily must be drawn from the particular provisions of the Constitution above discussed, saying that the acts of the legislature in establishing courts "should not be stricken down on the ground that they were violative of what might be conceived by vague implications to be the general spirit of the Constitution, or that they did not conform to the constitutional pattern for district courts or county courts." The implications which have been discussed above are not vague implications, and they do not arise out of what may be conceived to be the general spirit of the Constitution. They are necessary implications that must be indulged to make effective the method set up in the Constitution for the administration of justice in the important cases within the constitutional jurisdiction of district courts. The judicial system, plan or "pattern" set up in the Constitution is not lightly to be disregarded, and should not be circumvented or nullified under the guise of creating "other courts". Chief Justice Conner, writing the opinion in State ex rel Peden v. Valentine, 198 S. W. 1006, 1007, application for writ of error refused, expressed proper judicial recognition of the system or "pattern" for the Texas courts as set up in the Constitution when he said:  ·

"An examination of the Constitution as a whole plainly shows that in organizing the judicial power of the state, courts of distinct grades and classes were provided, which were given carefully prescribed spheres of action within which the judicial functions of each could be exercised. In thus apportioning the judicial power the several classes of courts were distinctly named."

The elaborate and complete system of courts, with particular provisions for the organization of district courts and for the exercising of their functions in trying the important cases committed to their jurisdiction, was set up by the Constitution to assure the people of the state the orderly, intelligent, fair and equal administration of justice in the trial of those cases, and this Court should not give its approval to an Act of the Legislature which tends to break down that system and to nullify

those provisions and limitations and which, if followed as an approved precedent, will inevitably break down the system, nullify the constitutional limitations and cause confusion in the administration of justice.

The authorities cited in the opinion of the majority do not support the conclusion that the Act attempting to create the "Court of Domestic Relations for Potter County" is valid. Carter v. Missouri, K. & T. Ry. Co., 106 Texas 137, 157 S. W. 1169, sustained an Act of the Legislature which created an emergency district court for Grayson County to have concurrent jurisdiction with the existing district court, and empowered the governor to appoint, upon the creation of the court and as its judge, one "having the qualifications provided by law for district judges." The provision of the Act that the term of the judge should continue until the court should cease to exist on December 1, 1914, was sustained only because the term of office did not extend beyond the time for the qualification of a successor, and there could be no successor. State ex rel Rector v. McClelland, 148 Texas 372, 224 S. W. 2d 706, held valid an Act of the 51st Legislature which created a probate court for Harris County and provided that it should have concurrent jurisdiction in probate matters with the county court of Harris County. The Legislature was careful to provide in that Act that the judge of the newly created court should be elected by the qualified voters of the county for a term of two years and should be "well informed in the laws of the state".

Many courts have been created by the Legislature under the authority given by Section 1 of Article V of the Constitution as amended in 1891. See Article 1970-1 to 339, Vernon's Annotated Civil Statutes, and Article 52-1 to 161, Vernon's Annotated Code of Criminal Procedure. Examination of these various acts discloses that when they give to the newly created court jurisdiction of cases of which the district courts have jurisdiction under the Constitution, they uniformly provide that the judge shall be elected by the qualified voters for a term of four years and shall have the qualifications prescribed for a district judge, and that when they give to the new court jurisdiction only of cases of which the county courts have jurisdiction under the Constitution, they uniformly provide that the judge shall be elected for a term of two years and shall have at least the qualifications prescribed for county judges. We have found no Act of the Legislature other than that creating the "Court of Domestic Relations for Potter County" and the Act condemned in Rochelle v. State, 89 Texas Crim. Rep. 592, 232 S. W.

838, that undertakes to provide for only six jurors in district court cases.

Giving full verity to the recital in the emergency clause of the Act that there is a present imperative need for combining all matters affecting domestic relations under the authority of a single court, it is nevertheless undoubtedly true, in view of the construction that heretofore has been placed by this Court upon Section 1 of Article V of the Constitution as amended in 1891, that such a court can readily be created without transgressing the limitations of the Constitution and can effectively be administered within those limitations.

I cannot agree that the Act can be sustained in part by striking out those parts of it that offend the Constitution, and this despite the statement in Section 15 that if any section of the Act shall be held invalid the remainder shall remain in effect.

The invalid provisions of the Act are not so distinct and separable that when they are stricken out that which remains is capable of being executed in accordance with the apparent legislative intent. The void parts of the Act affect the whole of it. They go to the organization of the court, the qualifications of the judge who presides over it, his appointment, his removal, and to all indictments brought in the court and the trial of all jury cases. They permeate the whole of the Act. A dominant purpose of the Act is to place full control of the court in the Juvenile Board, giving it authority to prescribe the qualifications of the judge of the court and to appoint and remove him. Another dominant purpose is that all indictments shall be brought by grand juries of "six members" and that all jury cases shall be tried before petit juries of "six members". A court thus constituted and administered is a court fundamentally different from the district courts constituted and administered according to the provisions of the Constitution. The entire Act is void, and the saving clause in its Section 15 cannot serve to save portions of the Act when the invalidity permeates all of it and affects its dominant purposes. Empire Gas & Fuel Co. v. State, 121 Texas 138, 162, 165, 47 S. W. 2d 265; White v. White, 108 Texas 570, 587, 196 S. W. 508, L. R. A. 1918a; County School Trustees of Orange County v. District Trustees, 137 Texas 125, 132-133, 153 S. W. 2d 434; 11 Am. Jur. pp. 845-849, Secs. 155, 156; Cooley's Constitutional Limitations (8th Ed.) Vol. 1, pp. 359-363; Commonwealth ex rel Margiotti v. Sutton, 327 Pa. 337, 193 Atl. 250; 59 C. J. pp. 647-648, Sec.

207; Whitener v. Belknap & Co., 89 Texas 273, 34 S. W. 594; State v. Gillette's Estate (Com. App.) 10 S. W. 2d 984, 988-989; Turner v. Tucker, 113 Texas 434, 258 S. W. 149.

The judgments of the Court of Civil Appeals and the District Court should be affirmed.

Opinion delivered June 28, 1950.