

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 30, 1962

Hon. J. W. Edgar
State Commissioner of Education
Texas Education Agency
Austin, Texas

Opinion No. WW-1408

Re: Whether Section 2 of Article 2815k-3
of Vernon's Civil Statutes prohibits
use of a junior college district
appropriation to defray any costs of
students who are in their third and
fourth collegiate years, and related
questions.

Dear Mr. Edgar:

We are in receipt of your request for opinion on the
above captioned question. Your letter informs us that a junior
college district in Texas is contemplating calling an election
pursuant to Article 2815k-3 of Vernon's Civil Statutes to au-
thorize the governing body of such district to offer and con-
duct classes in the third and fourth collegiate years and to
award baccalaureate degrees in those fields not specifically
prohibited.

Article 2815k-3 states in part as follows:

"Section 1. _Any junior college district_ in
this State, situated entirely or in part within
the boundaries of any city having a population in
excess of one hundred sixty thousand (160,000)
according to the last preceding decennial Federal
Census and having less than two (2) colleges or
universities offering baccalaureate degrees within
the boundaries of any such city, _is hereby author-
ized_, subject to the other provisions of this Act,
_to offer and conduct classes which may be required
or accepted of candidates for baccalaureate degrees
in the fields of liberal arts, business training,
teacher education and music during their junior and
senior years_, and to award such degrees, to the ex-
tent that the governing body of any such district
shall deem advisable, provided nothing in this Act
shall be construed to permit or authorize any jun-
ior college district in this State which elects to

take advantage of this Act to award degrees in the fields of engineering, law, medicine, agriculture, journalism, architecture, or pharmacy.

"Sec. 2.  <u>No funds heretofore or hereafter appropriated by the Legislature of this State for payment to any such junior college district shall be used to defray any of the costs of teaching or otherwise defraying the costs of students who are in their third and fourth collegiate years</u>. Furthermore any college made a senior college under the authority of this Act shall be prohibited from receiving state aid for junior and senior level work for twenty (20) years from the date of the passage of this Act.

"Sec. 3.  The power and authority herein granted shall not apply or be available to any junior college district unless and until the governing board of such district is authorized to proceed under the terms hereof at an election held for such purpose.  Such election shall be held in the following manner:  the governing board of such district shall, without the prerequisite of the filing of any petition, order an election to be held in such junior college district, such election to be held not less than twenty (20) days nor more than thirty (30) days from the date of said order calling such election, and such governing board shall give public notice of such election by publishing notice of such election in a newspaper of general circulation in such district at least once a week for a period of three (3) consecutive weeks between the date of the order calling the election and the date of the election.  <u>Only those legally qualified voters who have duly rendered property for taxation in such junior college district shall be permitted to vote</u>.  Except as modified herein, such election shall be conducted and canvassed in accordance with the General Laws relative to elections in Independent School Districts.  <u>If a majority of the votes cast at such election favor the exercise of the power herein granted, and only in such event, the governing body of such junior college district shall be vested with the additional powers and authority prescribed by this Act</u>.

"The governing board of such junior college district may call the election herein provided for

at any time after the effective date of this Act, but if an election is called and held hereunder and the proposition should fail to receive a majority of the votes cast, then no additional election shall be called on such proposition until at least one year after the date such prior election was held.

"Sec. 4. This Act shall be cumulative of all other laws and shall not be construed to limit or affect the classes not being offered or which may be offered and conducted by junior college districts not subject to the provisions of this Act; nor to limit or affect the classes which may be offered and conducted in addition to those described in Section 1 above by junior college districts which are subject to the provisions of this Act, whether or not they elect to take advantage of this Act.

"Sec. 5. _If any Section, sentence, clause, phrase, or word in this Act or application thereof to any person or circumstance is held invalid, such holding shall not affect the validity of the remaining portions of this Act, and the Legislature hereby declares it would have passed such remaining portions despite such invalidity._" (Emphasis added)

Your first series of questions is stated as follows:

"Query 1. Re first sentence (a): Does Section 2 prohibit use of the junior college district appropriation (see S.B. 1, Acts 57th Leg., 1st C.S. Article IV, pg. 396, pars. 1-a and 2-e) to defray any costs of students who are in their third and fourth collegiate years; viz., to allow proration thereof so as to enable a tuition uniform for each of the four years.

"Re second sentence (b): Does the phrase 'junior and senior _level_ work' in Section 2 mean junior and senior _class_ work or junior college and senior college level work; viz., does Section 2 prohibit State appropriations to a junior college district which votes to and does operate third and fourth collegiate years."

Regarding your Query 1(a), as we construe Section 2, the Legislature has prohibited any appropriation by it being used toward the costs of conducting any classes or any other expenses relative to those students in their third and fourth

collegiate years of the senior college, when created.  It follows that if any special or new teachers are employed, or any laboratories or other facilities are needed relative to the third and fourth collegiate years, that no state appropriation may be used to defray any part of such expenses.

From your letter we are apprised that presently there are several junior college districts operating so-called senior college divisions, but that none of them were created pursuant to Article 2815k-3.  It would seem that the purpose of a junior college district is to establish and manage a junior college only; however we note from the provisions of Article 2815k-3 that "any junior college district . . . is hereby authorized, subject to the other provisions of this Act, to offer and conduct classes which may be required or accepted of candidates for baccalaureate degrees . . . during their junior and senior years and to award such degrees. . . ." Therefore, if the junior college district, subject to provisions later discussed, adds work for the junior and senior years and awards degrees, the result is a "college made a senior college under the authority of this Act."  It follows that in such districts there will be a junior college division and a senior college division.

The caption to Article 2815k-3 states in part as follows:

"An Act authorizing certain junior college districts to offer classes to candidates for baccalaureate degrees in certain fields during their junior and senior years, and to award degrees in such fields; . . ."

and so when the Legislature in Section 2 speaks of "junior and senior level work," we interpret that phrase to mean any work undertaken or classes offered during the junior and senior years, i.e., in the senior college division of the district.  Section 2 does not prohibit state appropriations to the junior college district itself, but does prohibit any state aid to defray costs of the senior college division, which conducts junior and senior level work.

Your second series of question are as follows:

"Where a junior college district pursuant to Article 2815k-3 elects and acts to come thereunder:

"Query 2:  (a)  Does adoption of the powers granted therein carry with it or vest in its board authority to assess and levy taxes within maximum

tax limits previously voted by the qualified property tax paying voters, for the construction of facilities, bond service and maintenance of the college operating also a 'senior division' the third and fourth collegiate years; or

"(b) Must or may a new maintenance tax and bond assumption election be held and carry before the district, whose educational functions have been so enlarged, may legally assess and levy taxes for such maintenance, bond servicing purposes, and issuance of new bonds; or

"(c) Does authority still exist in the district only to assess and levy taxes for its 'junior division'--first and second collegiate years--college maintenance and building needs previously voted under provisions of Article 2815h-3b."

An inspection of the statutes reveals that if the junior college district elects to assume the responsibility of a senior college within the district, the status of the district is still the same, and it has all the powers previously conferred on it. However, we find that the statutes giving the district power to levy and collect taxes refer to "Junior college purposes," and therefore when this phrase is used, no taxes may be levied for "senior college purposes."

For instance Section 7 of Article 2815h allows the district to issue bonds, provide for interest and sinking funds and to levy taxes "for the support and maintenance of the Junior College," and for "Junior College purposes." Section 10 of that statute, Articles 2815h-3a and 2815h-3b all contain the same phraseology; consequently none of these statutes gives the district any authority to assess and levy taxes for support of the senior college division.

When the Legislature enacted Article 2815k-3, they also enacted Article 2815r-1, which does not in any section require that money realized from the issuance of bonds and notes be used exclusively for junior college purposes. We call your attention to all eleven sections of this Article, but only quote from Section 1, as follows:

"The board of regents of any junior college district heretofore or hereafter organized under the laws of the State of Texas are hereby severally authorized and empowered, each for its respective institution or institutions, to construct

Hon. J. W. Edgar, page 6  (WW-1408)

acquire and equip on behalf of such institution, buildings and other structures and additions to existing buildings and other structures and acquire land for said additions, buildings and other structures in any manner authorized by law, including the power of eminent domain exercised in the manner prescribed for any independent school district, if deemed appropriate by said governing body. Said constructions, equipping and acquisition may be accomplished in whole or in part with proceeds of loans obtained from any private or public source. The said governing boards are also severally authorized to enter into contracts with municipalities and school districts for the joint construction of said facilities." (Emphasis added)

We answer your second group of questions accordingly: Authority is still vested in the junior college district to assess and levy taxes for junior college purposes only or for the "junior college division" under Articles 2815h, et seq. The said district has no authority to assess and levy taxes for support and maintenance of its senior college division, but may obtain loans, enter into contracts, issue its bonds and notes, pledge its fees or make use of any other proceeding authorized by Article 2815r-1. If the district contains a city of not less than two hundred twenty-five thousand (225,000) population, it may receive donations of cash pursuant to Article 2815i.

Your questions continue as follows:

"In short, in connection with taxation questions raised in Query 2, what is the legal effect of that sentence in Section 3 reading: Only those legally qualified voters who have duly rendered property for taxation in such junior college district shall be permitted to vote. Is such sentence consonant with or in violation of Article VI, Section 2, Constitution of Texas; and if in violation may the problem be resolved in a manner decided in King v. Carlton I.S.D., 295 S.W.2d 408 (Tex.Sup. 1956). See also Section 3 of Article 2784e-1, as amended following King v. Carlton, supra."

Section 2 of Article VI of the Constitution of Texas states in part as follows:

"Every person subject to none of the foregoing disqualifications who shall have attained the age

of twenty-one (21) years and who shall be a citizen of the United States and who shall have resided in this State one (1) year next preceding an election and the last six (6) months within the district or county in which such person offers to vote, shall be deemed a qualified elector; and provided further, that any voter who is subject to pay a poll tax under the laws of the State of Texas shall have paid said tax before offering to vote in any election in this State and hold a receipt showing that said poll tax was paid before the first day of February next preceding such election. . . ."

We also call your attention to section 3a of Article VI of the Constitution, reading as follows:

"When an election is held by any county, or any number of counties, or any political subdivision of the State, or any political sub-division of a county, or any defined district now or hereafter to be described and defined within the State and which may or may not include towns, villages or municipal corporations, or any city, town or village, <u>for the purpose of issuing bonds or otherwise lending credit, or expending money or assuming any debt, only qualified electors who own taxable property in the State, county, political sub-division, district, city, town or village where such election is held, and who have duly rendered the same for taxation, shall be qualified to vote and all electors shall vote in the election precinct of their residence</u>."

An identical situation, which may prevail if Article 2815k-3 is to be complied with, was presented to the Court in <u>King v. Carlton Independent School District</u>, 156 Tex. 365, 295 S.W.2d 408 (1956). In that case an election to <u>adopt</u> the provisions of Article 2784e-1 was in question. Article 2784e-1 required that for the <u>adoption</u> election only "property taxpaying qualified voters of such district, whose property has been duly rendered for taxation, shall be entitled to vote."

In the course of the opinion Chief Justice Hickman stated at page 412:

"Any qualified elector, as defined by that Article, is entitled to vote in any election other than one for which additional qualifications are prescribed by some other provision of the Constitution. The Legislature was not authorized to prescribe any other standard for voters at the adoption

election than that of qualified electors as de-
fined by Article VI, Section 2. . . .   More speci-
fically stated,the Legislature was not authorized
to limit the voters at the adoption election to
'qualified voters of such district who own prop-
erty which has been duly rendered for taxation on
the tax rolls of the county for that purpose.'
All of the language just quoted following the words
'qualified voters of such district' is in conflict
with the provisions of Article VI, Section 2, of
the Constitution, and should therefore be stricken
from the Act."

We therefore advise you that the voting qualifications
contained in Section 3 of Article 2815k-3 are in violation of
Section 2 of Article VI of the Constitution.

Since Section 5 of Article 2815k-3 provides a savings
clause, it follows that "When the invalid provision is stricken,
the Act is made workable, leaving the question of the <u>adoption</u>
of the Act to be determined by an election at which 'qualified
electors' shall participate.  Jordan v. Crudgington, 149 Tex.
237, 231 S.W.2d 641."  (Emphasis added) <u>King v. Carlton</u>, <u>supra</u>.

You are advised that the proposition of whether or not
the residents of the junior college district adopt the provi-
sions of Article 2815k-3 should be submitted only to the quali-
fied voters under Section 2 of Article VI of the Constitution of
Texas.  <u>King v. Carlton Independent School District</u>, <u>supra</u>.

## SUMMARY

1.  Section 2 of Article 2815k-3 prohibits the
use of junior college appropriations to defray costs
of teaching of students in the senior division or any
other expenses of such division in a junior college
district.  "Junior and senior level work" means any
work undertaken by students in classes offered in the
senior college division of the district.

2.  The adoption of Article 2815k-3 does not
carry with it or vest in the governing body authority
to assess and levy taxes for the senior college divi-
sion.  The district's authority to obtain money in
this regard is limited to Article 2815r-1, et seq.
The district still has authority to assess and levy
taxes for its junior college division pursuant to
Article 2815h, or accept donations if the provisions
of Article 2815i apply to it.

3.  Section 3 of Article 2815k-3 is unconstitutional and in order to validly adopt the remaining provisions of such Act, the question of adoption should be presented only to those voters qualified under Section 2 of Article VI of the Constitution of Texas.

Yours very truly,

Will Wilson
Attorney General of Texas

By Fred D. Ward
Fred D. Ward
Assistant

FDW:wb

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Tom McFarling
Frank R. Booth
Joe Osborn
Bob Shannon

REVIEWED FOR THE ATTORNEY GENERAL

BY:  Leonard Passmore